UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PROTEGRITY CORPORATION AND PROTEGRITY USA, INC., PATENT LITIGATION | MDL No. 2600 **ORDER STAYING CASES** |

This multidistrict litigation consists of twenty-one consolidated patent infringement cases, in which Protegrity[1] asserts two patents:  U.S. Patent Nos. 8,402,281 and 6,321,201.  Out of the seventeen accused infringers, whom the Court will refer to as "defendants" for simplicity (though some are actually declaratory judgment plaintiffs), three -- Informatica, Square, and Epicor -- have filed a total of seven petitions before the Patent Trial and Appeal Board ("PTAB") asking that it institute covered business method ("CBM") reviews of the claims of the asserted patents and, ultimately, to invalidate them.  PTAB has instituted review on the challenged claims, and will begin issuing final written decisions on validity by September 5, 2016, at the latest.  In the meantime, defendants ask the Court to stay these proceedings pending the outcome of the PTAB proceedings.  Protegrity agrees, but only if the stay is predicated on defendants agreeing to certain conditions.  The Court stays the litigation without conditions pending completion of the PTAB review.

**BACKGROUND**

The Leahy-Smith America Invents Act ("AIA") created a new administrative procedure to

---

[1] Protegrity Corporation is a plaintiff in all of the consolidated cases, while Protegrity USA, Inc., is a plaintiff in some of them.  The Court refers to both collectively as "Protegrity."

United States District Court
Northern District of California

allow parties who have been sued for infringing a patent that contains at least one claim directed at a "covered business method" to petition PTAB to determine whether claims of the patent are valid. *See* AIA, Pub. L. No. 112-29, § 18 (Sept. 16, 2011)[2] (included as an uncodified note to 35 U.S.C. § 321), *corrected by* Leahy-Smith Correction Act, Pub. L. No. 112-274, 126 Stat. 2456 (Jan. 14, 2013).  Section 18 of the AIA also provides for stays of patent infringement cases that involve patents subject to a CBM proceeding.  In deciding whether to grant a stay, courts are to consider four factors:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1).

The first three factors are the same as those considered by courts when determining whether to stay cases pending inter partes reviews before PTAB, which are closely related to CBM reviews.  The fourth factor is new.  According to Senator Charles Schumer, who, along with Senator Jon Kyl, was one of the two principal authors of section 18, *see* 157 Cong. Rec. S103032 (daily ed. Mar. 1, 2011) (statement of Sen. Leahy), the addition of the fourth factor "places a very heavy thumb on the scale in favor of a stay being granted," such that "if a proceeding against a business method patent is instituted, the district court would institute a stay of litigation unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination."  *See* 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer); *see also* 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Schumer) ("Since the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a

---

[2] Although the AIA was signed into law on September 16, 2011, the CBM review component did not come into force until a year later.  *Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Ill.*, Nos. 1:10CV01370, 1:11CV00082, 1:12CV01068, 1:12CV01070, 2013 WL 1662952, at *2 (N.D. Ohio Apr. 17, 2013) (citing AIA § 18(a)(1), P.L. 112-29 (2011); 37 C.F.R. § 42.300).  The program is a transitional one, and expires on September 16, 2020.  *See* AIA § 18(a)(3)(A).

district court would not issue a stay" in light of the fourth factor.).

**DISCUSSION**

Protegrity agrees that staying this case is appropriate, but only if two conditions are met: (1) the Court conditions the stay on defendants agreeing to be estopped from challenging the validity of the patents based on the same prior art or grounds addressed during the CBM reviews, and (2) the stay ends when PTAB issues the first final decision in the pending CBM reviews.  In the event these conditions are not imposed, Protegrity asks for discovery into any joint defense agreements between the defendants.

### A.      Conditioning the Stay on Estoppel

Section 18 of the AIA attempts to prevent duplicative proceedings before PTAB and the courts by estopping the petitioner and the petitioner's real party in interest in a CBM review from subsequently raising in a civil action any invalidity arguments raised before PTAB.  *See* AIA § 18(a)(1)(D).  Protegrity argues that each of the petitioning defendants should be required to agree that they will be estopped by the invalidity arguments raised in each others' petitions, and that each of the non-petitioning defendants should agree to be bound to the same extent as the petitioning defendants.  When the Court asked the non-petitioning defendants whether they would agree to this, all except for one said that they would agree to be estopped, but only as to any grounds on which PTAB issues a final written decision.  *See* Defendants' Motion to Stay at 11:26-12:1, Dkt. No. 40.  The one exception, Dataguise, stated that if a stay were conditioned on estoppel, it would not agree.  *See id.* at 11:26-12:1.

There is certainly no requirement that the Court impose an estoppel condition on the defendants who did not file CBM petitions:  Congress is presumed to have acted deliberately when it limited the estoppel provisions to "[t]he petitioner . . . or the real party in interest or privy of the petitioner," AIA § 18(a)(1)(D), while allowing any "party" to seek a stay based on a CBM proceeding, *see id.* § 18(b)(1); *see also Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2015 WL 1396632, at *4 (N.D. Ill. Mar. 25, 2015) (declining to condition stay on non-petitioning defendants' consent to be estopped), *appeal docketed*, No. 15-1547 (Fed. Cir. Apr. 10, 2015); *Progressive Cas.*, 2013 WL 1662952, at *5 (staying case even though only one of two non-

United States District Court
Northern District of California

United States District Court
Northern District of California

1    petitioning defendants had consented to estoppel); *cf. Evolutionary Intelligence, LLC v.*

2    *LivingSocial, Inc.*, No. 13-cv-04205-WHO, 2014 WL 213179, at *3 (N.D. Cal. Jan. 17, 2014)

3    (staying case pending inter partes review despite presence of non-estopped defendant).  Some

4    legislative history also suggests that Congress, or at least some of its members, contemplated that

5    courts should not impose conditions on stays beyond the four factors spelled out in the statute.

6    *See* 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) ("By codifying

7    the exclusive set of factors that courts are to consider when granting stays, the [AIA] precludes

8    courts from inventing new factors such as extra-statutory estoppel tests.").

9            Nevertheless, a number of courts in this district have concluded that stays pending PTAB

10   proceedings should be conditioned on non-petitioning defendants agreeing to be estopped by the

11   results of the PTAB proceedings, based on the first, third, and fourth factors.  *See Capella*

12   *Photonics, Inc. v. Cisco Sys., Inc.*, No. C-14-3348 EMC, 2015 WL 1006582, at *2 (N.D. Cal. Mar.

13   6, 2015); *Personalweb Techs., LLC v. Google Inc.*, No. 5:13-cv-01317-EJD, 2014 WL 4100743, at

14   *5 (N.D. Cal. Aug. 20, 2014); *Evolutionary Intelligence, LLC v. Millenial Media, Inc.*, No. 5:13-

15   CV-04206 EJD, 2014 WL 2738501, at *4 (N.D. Cal. Jun. 11, 2014).  In considering the factors as

16   they apply to this case, however, the Court finds that conditioning a stay on the defendants

17   agreeing to be bound by estoppel is unwarranted.[3]

18           **Simplification and litigation burdens.**  Protegrity and the cases it cites warn that if courts

19   do not condition stays on defendants agreeing to be estopped, they will be faced with the prospect

20   of adjudicating claims that were brought -- or should have been brought -- before PTAB,

21   increasing the complexity of the case and the burden on the parties and the Court.  While that is

22   certainly a legitimate concern, the cases Protegrity cites were considering stays pending inter

23   partes reviews.  *See Capella*, 2015 WL 1006582, at *2; *Personalweb*, 2014 WL 4100743, at *5;

24   *Evolutionary Intelligence*, 2014 WL 2738501, at *4; *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, Nos. C-

25   12-4958-PSG, C-12-4959-PSG, C-12-4962-PSG, 2013 WL 4475940, *5 (N.D. Cal. Aug. 16,

26   2013); *e-Watch Inc. v. Avigilon Corp.*, No. H-13-0347, 2013 WL 6633936 (S.D. Tex. Dec. 17,

27

28   [3] The Court need not tarry on the second factor, since it clearly weighs in favor of a stay: discovery is not complete and trial dates have not been set.

United States District Court
Northern District of California

1    2013).  While petitioners in inter partes reviews are estopped from relitigating validity in a civil

2    action "on any ground that the petitioner raised *or reasonably could have raised*" during the IPR

3    proceeding, *see* 35 U.S.C. § 315(e), the estoppel provisions for CBM reviews are narrower:  they

4    only prohibit raising invalidity grounds that were actually "raised" during the CBM review in a

5    civil action.  *See* AIA § 18(a)(1)(D).  The only burden the Court might even potentially be able to

6    avoid by extending the estoppel provisions to the non-petitioning defendants is the possibility of

7    having to re-adjudicate the very same invalidity defenses that PTAB considered and rejected.

8    Although the existence of the estoppel provision indicates that Congress had some concerns that

9    accused infringers would try for two bites at the apple, defendants are less likely to ask this Court

10   to invalidate a patent on a ground that PTAB found inadequate, diminishing the practical

11   likelihood of duplicative proceedings.  Moreover, if a PTAB decision upholding the validity of the

12   asserted claims is appealed to the Federal Circuit and affirmed, there is a possibility that the

13   appellate decision will have stare decisis effect if the non-petitioning defendants later attempt to

14   argue invalidity on essentially the same record.  *See Stevenson v. Seats, Roebuck & Co.*, 713 F.2d

15   705, 711 n.5 (Fed. Cir. 1983) ("If . . . the record in the second suit is substantively identical to the

16   record produced in the first suit, then it is extremely likely that the court will give its prior holding

17   [of validity] stare decisis effect.").

18          Conditioning the stay on agreeing to estoppel is particularly unlikely to lead to

19   simplification in this case because defendant Dataguise has said that it will not agree to be

20   estopped.  *See* Defendants' Motion to Stay at 11:26-12:1.  If the Court were to impose the estoppel

21   condition Protegrity seeks, the case would simply end up going forward, at least as to Dataguise,

22   eliminating much of the potential simplification from staying the case until PTAB has had its say.

23   Of course, if a party's statement that it will not agree to estoppel is used as a factor in determining

24   whether to impose the condition in the first place, there is a danger parties will be encouraged to

25   tactically hold out.  But Dataguise's stated refusal to agree to estoppel does not appear to be

26   tactical:  it previously filed a motion to dismiss arguing that Protegrity's patents are invalid under

27   35 U.S.C. § 101, which is fully briefed, and which it reasonably wishes to have decided as soon as

28   possible.  In fact, until last month it consistently took the position that the case should not be

United States District Court
Northern District of California

1    stayed, and that its motion should be decided first.  *See* Motion for Relief from Stay, Case No.

2    3:14-cv-04283-JD, Dkt. No. 75 (seeking to lift the stay so that the § 101 motion could be decided);

3    Case Management Statement at 7 n.6, Dkt. No. 12 (Dataguise requesting that its motion to dismiss

4    be decided before addressing defendants' motions to stay).  Since there is no evidence of

5    gamesmanship on Dataguise's part, the Court takes into account the fact that conditioning the stay

6    on the parties agreeing to be estopped is unlikely to simplify the issues in this case.

7            On the flip side, the benefits to imposing a stay are clear.  From a purely statistical point of

8    view, and without expressing any opinion on the validity of Protegrity's particular patents, there is

9    a good chance that many, if not all, of the asserted patents will not survive PTAB's review.  PTAB

10   itself certainly thinks so: in its decisions instituting CBM review, it found it "more likely than not"

11   that the claims on which it instituted review were unpatentable.[4]  Other claims whose validity has

12   been adjudicated by PTAB have not been left untouched.  One source has found that, for CBM

13   reviews decided by July 1, 2015, approximately 95% of the claims on which review was instituted

14   were cancelled.  *See* Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Claim and Case

15   Disposition, http://www.aiablog.com/wp-content/uploads/2015/07/PTAB-STATS-Claim-and-

16   Case-Disposition-7.15.pdf (last accessed Aug. 10, 2015); *see also* CBM: Survival Rate of

17   Instituted Claims, http://www.postgranthq.com/statistics/percentage-of-final-decisions-with-

18   concurrent-litigation-from-fchs-stats/ (last accessed Aug. 10, 2015) (similar statistics as of Dec.

19   31, 2014).  If the claims challenged by the petitioning defendants are invalidated, this case would

20   be at an end.  *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014)

21   ("This CBM review could dispose of the entire litigation: the ultimate simplification of issues.").

22   _____

23   [4] *See Square, Inc. v. Protegrity Corp.*, CBM2014-00182, 2015 WL 1022892, at *24 (P.T.A.B.
     Mar. 5, 2015); *Epicor Software Corp. v. Protegrity Corp.*, CBM2015-00006, 2015 WL 1870235,
24   at *23 (P.T.A.B. Apr. 21, 2015); *Epicor Software Corp. v. Protegrity Corp.*, CBM2015-00002,
     2015 WL 1870660, at *19 (P.T.A.B. Apr. 22, 2015); *Square, Inc. v. Protegrity Corp.*, CBM2015-
25   00014, 2015 WL 2126655, at *22 (P.T.A.B. May 4, 2015); *Informatica Corp. v. Protegrity Corp.*,
     CBM2015-00010, 2015 WL 2251498, at *23 (P.T.A.B. May 11, 2015); *Informatica Corp. v.*
26   *Protegrity Corp.*, CBM2015-00021, 2015 WL 3523401, at *23 (P.T.A.B. Jun. 1, 2015); *Epicor*
     *Software Corp. v. Protegrity Corp.*, CBM2015-00030, 2015 WL 3545374, at *9 (P.T.A.B. Jun. 4,
27   2015).  In order to institute review, PTAB only had to find that it was "more likely than not that *at*
     *least one of the claims* challenged in the petition is unpatentable," 37 C.F.R. § 42.208(c)
28   (emphasis added), but the cited decisions make clear that it made an initial determination with
     respect to each of the claims on which it instituted review.

1    Even if only some claims are invalidated, "there will . . . be [at least] some amount of

2    simplification for the court and the parties." *Moneycat Ltd. v. Paypal Inc.*, No. 14 CV 02490 JST,

3    2014 WL 5689844, at *3 (N.D. Cal. Nov. 4, 2014).

4         Consequently, the first and fourth factors weigh in favor of imposing the stay without

5    requiring estoppel.

6         **Prejudice and tactical advantage.**  Protegrity also urges that it would be unfair for the

7    non-petitioning defendants to enjoy a free ride on a stay obtained by the petitioning defendants

8    without the downside of abiding by the AIA's estoppel provisions.  But unfairness may well result

9    from imposing an estoppel condition, too.  A defendant may legitimately want to bring (or have

10   someone else bring) certain invalidity defenses before PTAB to obtain a stay, but preserve other

11   invalidity defenses for the district court case, in order, for example, to dissuade the patentee from

12   arguing for a broad claim construction.  Imposing an estoppel condition would prevent them from

13   doing that, without achieving any corresponding benefit.  *See Intellectual Ventures II LLC v.*

14   *Huntington Bancshares Inc.*, No. 2:13-CV-00785, 2014 WL 2589420, at *4 (S.D. Ohio Jun. 10,

15   2014) ("[A]lthough Plaintiff suggests it would be unfair for Defendants to obtain the benefit of

16   IPR proceedings without being bound by the arguments raised therein, it would be more unfair to

17   condition a stay on Defendants' being bound by arguments raised in a proceeding over which they

18   have no control.").

19        In addition, the alleged unfairness Protegrity points to is present in any multi-defendant

20   case where only a subset of defendants move for a stay.  Congress could easily have written the

21   estoppel provision to cover any defendant that benefits from a stay, but chose not to, suggesting

22   that the concern Protegrity raises does not, on its own, compel imposing an estoppel condition.

23        And while in many cases the scope of the proposed estoppel condition is relatively clear

24   because there is only a single pending PTAB proceeding, here there are seven proceedings brought

25   by three separate petitioners.  It is unclear why the non-petitioning defendants should be estopped

26   as to the invalidity grounds raised in all seven petitions, especially when if they were the only ones

27   that had petitioned, they would only have been estopped as to the grounds that they themselves

28   raised.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Perhaps anticipating this concern, Protegrity additionally seeks to estop the defendants

2    who did file petitions before PTAB as to the grounds raised in each other's petitions.  But that

3    makes a hash of Protegrity's argument that estoppel is necessary in order to prevent defendants

4    from "sitting back and reaping the benefit of other parties' work," Opposition at 4:19-20, Dkt. No.

5    43, since the petitioning defendants are obviously not free riding.  There is no basis for expanding

6    the statutory estoppel simply because other parties happened to file petitions relating to the same

7    patents in the same timeframe.  Protegrity does not cite a case where a court has imposed such a

8    provision.

9    Consequently, the Court finds that the third prong does not weigh in favor of imposing an

10   estoppel condition.

11   **B.    Lifting Stay After First Final Decision**

12   Protegrity's second condition is that the case be stayed only until the first final decision

13   from PTAB issues in the seven pending CBM reviews.  Protegrity argues that it will be prejudiced

14   from an extended stay, in light of the fact that the patents-in-suit will expire on February 23, 2017,

15   giving Protegrity a limited amount of time in which to move for injunctive relief if the stay

16   extends until all the PTAB proceedings are over.

17   While the Court is sensitive to this concern, it believes that it makes more sense for the

18   parties to simply revisit the stay after the first written decision is issued, without prejudging the

19   issue at this stage.  If the first decision invalidates the claims at issue in that proceeding, there

20   would be no reason to lift the stay as to the remaining claims:  the four factors section 18(b)(1)

21   factors would weigh just as heavily, if not more so, in favor of a stay.

22   Accordingly, while the Court will not automatically terminate the stay when the first CBM

23   proceeding results in a final decision, the parties are directed to file a status report each time

24   PTAB issues a written decision in each of the pending CBM reviews detailing the results, stating

25   whether any side intends to file an appeal, and setting forth each side's positions on continuing the

26   stay.

27   **C.    Discovery into Joint Defense Agreement**

28   The AIA's estoppel provisions apply not just to the petitioner, but to the petitioner's "real

8

United States District Court
Northern District of California

party in interest." AIA § 18(a)(1)(D). Protegrity has asked for discovery into any joint defense agreements between the defendants in order to determine whether anyone other than the three petitioners might be bound by the estoppel provisions. The parties are agreed that the mere existence of a joint defense agreement does not necessarily suggest that the defendants are real parties in interest to one another, but Protegrity asks for very focused discovery to see if defendants have a closer relationship.

This request is fair. It may be that the joint defense agreement simply "contains standard and boilerplate language that is not discoverable because it is not relevant to any claim or defense in this case," *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009), but to the extent it contains provisions relating to the CBM reviews, it may be discoverable. Defendants point out that PTAB has refused Protegrity's request for discovery into the joint defense agreement, *see* Declaration of Robin Brewer ¶¶ 4-5, Dkt. No. 47, but discovery is considerably more limited in PTAB proceedings than it is in litigation before a district court: routine discovery is limited to information "inconsistent with a position advanced by the party during the proceeding concurrent with the filing of the documents or things that contains the inconsistency," 37 C.F.R. 42.51(b)(1)(iii), which PTAB has interpreted to deny discovery where the party seeking discovery does not already know of an inconsistency, *see* Order Denying Discovery, Dkt. No. 47-1. A number of commentators have noted that it is difficult to uncover evidence of privity using the PTAB's limited discovery procedures. *See, e.g.*, Scott A. McKeown, Lack of PTAB Discovery to Shift Privity Question to District Courts, http://www.patentspostgrant.com/lack-of-ptab-discovery-to-shift-privity-question-to-district-courts (Feb. 4, 2014) (last accessed Aug. 10, 2015); Alison Baldwin, PTAB Holds A Firm Line On Additional Discovery, Law360, http://www.law360.com/articles/620537/ptab-holds-a-firm-line-on-additional-discovery (Feb. 20, 2015) (last accessed Aug. 10, 2015). PTAB's discovery orders and practices are in no way binding on this Court.

Defendants are directed to lodge any joint discovery agreements with the Court for *in camera* review. If the agreements are garden-variety joint defense agreements with no relevance to the estoppel standard, the Court will not order production. Otherwise, the Court will determine

1  what further discovery is warranted.

2  **CONCLUSION**

3  The Court orders the stay continued pending the conclusion of the covered business

4  method reviews of the asserted patents.  The parties will file a status report each time PTAB issues

5  a written decision in each of the pending CBM reviews detailing the results, stating whether any

6  side intends to file an appeal, and setting forth each side's positions on continuing the stay.

7  Defendants will additionally provide a copy of any joint defense agreements to the Court *in*

8  *camera*.

9  **IT IS SO ORDERED.**

10  Dated: August 10, 2015

11

12

13  _____
     JAMES DONATO
     United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California