Jon B. Hyland
BARNES & THORNBURG LLP
2100 McKinney Avenue, Suite 1250
Dallas, Texas 75201
Telephone: (214) 258-4123
Facsimile: (214) 258-4199
E-mail: jon.hyland@btlaw.com

*Attorney for Corduro, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PROTEGRITY CORPORATION AND PROTEGRITY USA, INC., PATENT LITIGATION | No.: 3:15-md-02600-JD<br><br>**CORDURO, INC.'S MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285**<br><br>Hearing Date: December 15, 2016<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Judge: The Honorable James Donato |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 15, 2016, or as soon thereafter as the matter may be heard, in Courtroom 11, the Courtroom of the Honorable James Donato, located at 450 Golden Gate Ave., San Francisco, California, Corduro, Inc. ("Corduro") will, and hereby does move this Court for an award of attorneys' fees and costs against Protegrity Corporation and Protegrity USA, Inc. (collectively "Protegrity") pursuant to 35 U.S.C. § 285.

This Motion is made pursuant to Federal Rule of Civil Procedure 54(d)(2) , Local Rule 54-5, and the authorities cited in the supporting Memorandum of Points and Authorities.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the supporting Declaration of Jon B. Hyland and the annexed Exhibits, and upon such other and further matters as the Court deems appropriate.

Pursuant to Local Rule 54-5(b)(1), the undersigned certifies that counsel for Protegrity and Corduro met and conferred on September 26, 2016 for the purpose of attempting to resolve any disputes with respect to this Motion, but no disputes were resolved.

## SUMMARY OF RELIEF REQUESTED

Corduro seeks an award of attorneys' fees pursuant to 35 U.S.C. §285 because this is an "exceptional case," under 35 U.S.C. § 285 because:  (1) Protegrity failed to perform a reasonable pre-suit investigation; and (2) Protegirty's conduct during the litigation was unreasonable.

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...............................................................................................................1

II.  FACTS ...............................................................................................................................1

III. ARGUMENT .....................................................................................................................2

    A.  Legal Standard—Exceptional Case Under Section 285 .......................................2

    B.  Protegrity knew or should have known that the patents-in-suit were invalid or were likely to be invalid....................................................................................4

    C.  Protegrity did not perform a sufficient investigation before filing the Connecticut Lawsuit ............................................................................................4

    D.  Protegrity has not litigated in good faith................................................................7

    E.  Protegrity Has Not Engaged in Good Faith Settlement Negotiations...................8

    F.  Corduro's Requested Fees and Costs are Reasonable ..........................................9

IV.  CONCLUSION..................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page(s)**

*Automated Business Co., Inc. v. NEC America, Inc.*,
    202 F.3d 1353 (Fed. Cir. 2000) ................................................................................ 3

*Cambrian Sci. Corp. v. Cox Communications, Inc.*
    79 F.Supp.3d 1111 (C.D. Cal. 2005) ........................................................................ 3

*Edekka LLC v. 3balls.com, Inc.*,
    WL 9225038 (E.D. Tex. Dec. 17, 2015) ................................................................... 4

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) ............................................................................ 4, 6

*GP Industries Inc. v. Eran Industries, Inc.*,
    500 F.3d 1369 (Fed. Cir. 2007) ................................................................................ 3

*Inland Steel Co. v. Ltv Steel Co.*,
    364 F.3d 1318 (Fed. Cir. 2004) ............................................................................ 3, 4

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
    2016 WL 3090633 (D. Del. May 31, 2016) .............................................................. 4

*JS Products, Inc. v. Kabo Tool Co.*,
    2014 WL7336063 (D. Nev. 2014) ............................................................................ 3

*Linex Technologies, Inc. v. Hewlett-Packard Co.*,
    2014 WL4616847 (N.D. Cal. 2014) .......................................................................... 4

*Octane Fitness, LLC v. ICON Health & Fitness*,
    134 S.Ct. 1749 (2014) ........................................................................................... 2, 3

**Statutes**

FRCP 12(b)(6) .................................................................................................................. 2, 8

35 U.S.C. § 285 .......................................................................................................... 2, 3, 4

35 U.S.C. § 112(6) ................................................................................................................ 5

28 U.S.C. § 1961 .................................................................................................................. 9

N.D. Texas Local Patent Rule 3-1 ..................................................................................... 5

N.D. California Local Patent Rule 3-1 .............................................................................. 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should declare this an exceptional case and award Corduro its costs and reasonable attorneys' fees. This case is exceptional because Protegrity has taken unreasonable positions and has litigated the case in an unreasonable manner. Protegrity did not perform an adequate pre-suit investigation prior to filing suit against Corduro. Protegrity knew or should have known that its patents were most likely invalid by at least the Fall of 2014. Protegrity consistently took unreasonable position during litigation, forcing Corduro to spend money unnecessarily to defend against Protegrity's baseless claims. To this day, Protegrity has not provided any evidence that would show that it conducted any sort of pre-suit investigation.

## II. FACTS

On July 28, 2014, Protegrity Corp. and Protegrity USA, Inc. (collectively "Protegrity") filed suit against Corduro, Inc. ("Corduro") in the United States District Court for the District of Connecticut ("the Connecticut Lawsuit"). Protegrity alleged that Corduro's PayMobile software app infringed U.S. Patents Nos. 8,402,281 and 6,321,201 ("the patents-in-suit"). Protegrity's complaint in the Connecticut Lawsuit did not make a single factual allegation regarding the Connecticut Court's personal jurisdiction over Corduro. Ex. 2. The complaint against Corduro was one thirty-two cases filed against various defendants alleging infringement of the patents-in-suit. The complaint that was filed against Corduro was a generic complaint and was nearly identical to the other complaints filed by Protegrity. The complaint in the Connecticut Lawsuit did not even identify a Corduro product that was alleged to infringe. Protegrity's complaint alleged that Infringed U.S. Patents Nos. 6,321,201 and 8,402,281. On November 19, 2014, Corduro filed a motion to dismiss for lack of personal jurisdiction. Ex. 3. On December 22, 2014, Protegrity filed its First Amended Complaint in the Connecticut Lawsuit. Ex. 4. On January 13, 2015, Corduro renewed its motion to dismiss for lack of

personal jurisdiction. Ex. 5. Protegrity finally stipulated to dismissal of the Connecticut Lawsuit on April 9, 2015.

Corduro filed a complaint for declaratory judgment of non-infringement against Protegrity on August 20, 2014. Ex. 6. Corduro alleged that it did not infringe the '201 and '281 patents. On November 19, 2014, Protegrity filed its answer and counterclaims, alleging Corduro infringed the '201 and '281 patents. Ex. 7. On November 26, 2014, Corduro filed its amended complaint, alleging that the '201 and '281 patents are invalid. Ex. 8. On December 10, 2014, Protegrity filed its answer and counterclaims to the amended complaint. Ex. 9. On December 18, 2014, Corduro filed a motion to dismiss pursuant to FRCP 12(b)(6) in regard to Corduro's allegations of willful and indirect infringement. Ex. 10. On January 21, 2015, Protegrity filed an amended complaint that omitted its allegations of willful and indirect infringement. Ex. 11.

Between August and November of 2014, seven petitions for Covered Business Method Patent Review were filed by third parties against the '201 and '281 patents.

On December 11, 2014, Protegrity filed a petition before the Judicial Panel on Multi-district Litigation to consolidate and transfer the lawsuit, along with nearly twenty other cases pending in courts across the country. Ex. 12. On February 20, 2015, the MDL panel transferred this case, along with other pending Protegrity cases, to the Northern District of California before this Court. Ex. 13.

The parties held their initial Case Management Conference before the Court on April 1, 2015. On August 10, 2015, the Court stayed all of the pending cases in light of decisions by the PTAB to institute Covered Business Method Review in all seven of the petitions.

Between March and June of 2016, the PTAB issued final decisions invalidating the relevant claims of the '281 and '201 patents. On July 15, 2016, this Court issued a judgment of invalidity regarding the patents-in-suit.

### III.   ARGUMENT

####   A.   Legal Standard—Exceptional Case Under Section 285

Pursuant to 35 U.S.C. § 285, a court may award attorneys' fees and expenses to a prevailing party in a patent infringement action if the case is "exceptional." In *Octane Fitness, LLC v. ICON Health & Fitness*, 134 S.Ct. 1749 (2014), the Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which it was litigated." *Id.*, at 1756. Under *Octane,* District Courts and encouraged to consider a number of non-exclusive factors in evaluating the totality of the circumstances, including but not limited to "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Id.,* at n.6 (internal citations and quotations omitted).

Most importantly, a party's conduct does not need to be sanctionable in order for a finding of an exceptional case. The Court held that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.*, at 1757.

"Section 285 discourages certain 'exceptional' conduct by imposing the cost of bad decisions on the decision maker." *Cambrian Sci. Corp. v. Cox Communications, Inc.,* 79 F.Supp.3d 1111, 1114 (C.D. Cal. 2005). The purpose of Section 285 is to deter frivolous claims of patent infringement. *Automated Business Co., Inc. v. NEC America, Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000).

"[A] patentee does not act in good faith if it raises an infringement claim in which 'no reasonable litigant could realistically expect success on the merits.'" *GP Industries Inc. v. Eran Industries, Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (internal citations omitted). "For this reason, proper investigation is an important pre-requisite to filing an infringement claim [.]" *JS Products, Inc. v. Kabo Tool Co.*, 2014 WL7336063, at *4 (D. Nev. 2014).

Courts may award attorneys' fees under Section 285 to the "prevailing party." 35 U.S.C. § 285. The prevailing party is the party that "receive[s] at least some relief on the

No.: 3:15-md-02600-JD –3–
CORDURO, INC.'S MOTION FOR ATTORNEYS' FEES

merits" which "alters . . . the legal relationship of the parties." *Inland Steel Co. v. Ltv Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004).

In this case, Corduro is the prevailing party because this Court issued a Judgment of Invalidity invalidating all claims of the patents-in-suit. Further, Protegrity Corp. and/or Protegrity USA, Inc. waived all rights to appeal the judgment. *See* Dkt. No. 106. *See Inland Steel*, 364 F.3d at 1319–21 (finding defendant was the prevailing party under 35 U.S.C. § 285 in a district court case after the PTO rejected the asserted claims during a re-examination proceeding).

### B. Protegrity knew or should have known that the patents-in-suit were invalid or were likely to be invalid

Protegrity knew or should have known that patents-in-suit were likely invalid under section 101 since at least the Fall of 2014 when, after the Supreme Court's *Alice* decision had issued, seven petitions for Covered Business Method Review ("CBM") were filed. Protegrity had a duty to re-evaluate its infringement case in Fall 2014. *See Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. CV 14-448-GMS, 2016 WL 3090633, at *3 (D. Del. May 31, 2016) (awarding attorneys' fees from date *Alice* issued, holding "regardless of whether [patentee] initially felt that it had a plausible claim, [patentee] had an obligation to re-evaluate its case in light of subsequent decisions [including Alice]"). However, Protegrity chose to continue litigating. Protegrity's failure to abandon its defense of patents that were likely invalid under *Alice* warrants a finding of an exceptional case. *See Edekka LLC v. 3balls.com, Inc.*, 2:15-CV-585 JRG, 2015 WL 9225038, at *3 (E.D. Tex. Dec. 17, 2015) (finding exceptional case and awarding fees where "no reasonable litigant could have reasonably expected success on the merits" of claim alleging infringement of ineligible patent).

### C. Protegrity did not perform a sufficient investigation before filing the Connecticut Lawsuit

"Patent litigation is a burdensome venture for all parties involved. Thus, plaintiffs must conduct careful investigation before bringing suit." *Linex Technologies, Inc. v. Hewlett-*

*Packard Co.*, 2014 WL4616847, at *3 (N.D. Cal. 2014).  This case is extraordinary because of the complete lack of a pre-suit investigation on the part of Protegrity.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328–29 (Fed. Cir. 2011) (affirming award of attorneys' fees and finding no adequate pre-suit investigation where patentee's counsel merely examined website and concluded infringement).

It is clear that Protegrity did not conduct any sort of investigation of Corduro's PayMobile app and whether it infringed the patents-in-suit prior to filing the Connecticut Lawsuit.  Protegrity claims to have performed a rigorous pre-suit investigation in regard to Corduro's PayMobile app, but Protegrity has been unwilling to produce any information that would back up its claims.  Also, Protegrity did not conduct a reasonable pre-suit investigation regarding whether the Connecticut Court had personal jurisdiction over Corduro.

Protegrity's infringement contentions clearly show that Protegrity did not conduct even a minimal pre-suit investigation.  On January 14, 2015, Protegrity served infringement contentions pursuant to the Northern District of Texas Local Patent Rule 3-1.  Ex. 14.  Local Patent Rule 3-1 in the Northern District of Texas is nearly identical to Local Patent Rule 3-1 in the Northern District of California and requires that, for each asserted claim, Protegrity provide:

> A chart identifying specifically and in detail where each element of each asserted claim is found within each instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identify of each structure, act, or material in the accused instrumentality that performs the claimed function[.]

Protegrity's infringement contentions provide none of this information.  Protegrity could not identify a single element of any of its asserted claims that it believed was present in the PayMobile app.  Protegrity asserted a total of 25 claims against Corduro.  For each element of each asserted claim, Protegrity merely speculated "on information and belief" that PayMobile practices that element.  For the vast majority of elements in Protegrity's infringement contentions, the contentions read simply "[o]n information and belief, Corduro must satisfy this

limitation." Moreover, Protegrity's infringement contentions did not contain a single screenshot from the accused PayMobile app. Protegrity's contentions only contain broad quotes taken from Corduro's website and Protegrity does not even attempt to show how the information on Corduro's website shows that a claimed element is present. Protegrity's contentions make clear that Protegrity did not analyze PayMobile prior to filing the Connecticut Lawsuit. Protegrity's "investigation" appears to have been no more than the investigation in *Eon-Net* where the Federal Circuit upheld an award of attorneys' fees where the plaintiff's counsel merely examined the defendant's website and concluded infringement. *See Id.* 653 F.3d at 1328-29.

When counsel for Corduro objected to Protegrity's useless infringement contentions, Protegrity eventually agreed to supplement its infringement contentions. However, instead of supplementing its contentions, Protegrity simply provided a declaration by its Chief Technology Officer, Ulf Mattsson. Ex. 15. In regard to Corduro's products, Mr. Mattsson stated:

> I have been intimately involved in Protegrity's enforcement of its patents and have analyzed information available to be [sic] concerning Corduro's PayMobile, PayNow Gateway, CRM, Developer Tools and Developer APIs to handle all payment processing.

What is the most telling about Mr. Mattsson's declaration is what it doesn't say. Mr. Mattsson claims to have "analyzed information" regarding Corduro's products, but does not indicate what this information is. The only specific reference to Corduro's products is a screenshot of Corduro's website that gives broad information regarding the features of PayMobile. Mr. Mattsson cites this webpage and states, over and over, that "on information and belief" Corduro must practice the elements of the asserted claims. Mr. Mattsson's declaration indicates that he did nothing more than look at non-technical information on Corduro's website and speculate regarding how Corduro's products might work. This hardly amounts to a "careful investigation before bringing suit."

Protegrity has refused to disclose any information regarding its investigation in support of its mediation position as well. Protegrity claims such investigation is privileged, even though

Protegrity has waived such privilege by asserting that it performed an adequate investigation as a defense to Corduro's claims for attorneys' fees. Regardless of the merits of Protegrity's assertion of privilege, Protegrity's claim charts speak for themselves. More than two years after Protegrity filed the Connecticut Lawsuit, Protegrity has still failed to disclose even a basic infringement theory. The simplest and most likely explanation for Protegrity's complete refusal to disclose any information about its pre-suit investigation is that there was not one.

Additionally, Protegrity did not conduct any sort of pre-suit investigation regarding personal jurisdiction before filing the Connecticut Lawsuit. Protegrity alleged no facts that would give rise to personal jurisdiction in the State of Connecticut in its complaint. In fact, Protegrity did not even allege that the Court in the Connecticut Lawsuit had personal jurisdiction over Corduro. Corduro was forced to retain local counsel, in addition to its lead counsel, in order to contest jurisdiction in the Connecticut Lawsuit. Protegrity should have never filed the Connecticut Lawsuit without investigating Corduro's contacts with the State of Connecticut.

Protegrity recklessly filed the Connecticut Lawsuit without having any idea how the accused PayMobile app works. Protegrity refused to comply with the Local Patent Rules in the Texas Lawsuit because it could not comply. Protegrity had no idea how PayMobile actually works. Protegrity was also reckless in filing the Connecticut Lawsuit without knowing whether the Court had jurisdiction over Corduro.

Protegrity had a duty to investigate Corduro's products and services before it filed the Connecticut Lawsuit. Protegrity also had a duty to investigate Corduro's contacts with the State of Connecticut before it filed the Connecticut Lawsuit. Protegrity's lack of a reasonable pre-suit investigation resulted in a tremendous and unnecessary expense to Corduro.

**D.  Protegrity has not litigated in good faith**

Protegrity filed the Connecticut Lawsuit despite the fact that Corduro has no connection to the State of Connecticut. In its complaint, Protegrity did not allege that Corduro had a single connection to Connecticut. In fact, Protegrity did not even allege that the Court had personal

jurisdiction over Corduro. When Corduro moved to dismiss due to lack of personal jurisdiction, Protegrity served voluminous discovery requests on Corduro as a fishing expedition aimed at finding some connection between Corduro and Connecticut. Ex. 16. Corduro successfully sought relief from the Court on the basis that Protegrity was not entitled to jurisdictional discovery because it had not made a prima facie showing that the Court had jurisdiction over Corduro. *See* Dkt. No. 28, Case No. 3:14-cv-1076 (D. Conn.)[1]. Protegrity amended its complaint, but included only an allegation that one of Protegrity's employees had downloaded PayMobile within Connecticut. Ex. 17. The argument that a plaintiff can manufacture jurisdiction in this manner has been soundly rejected by the vast majority of courts that have considered it. Corduro was forced to spend a large amount of money litigating the Connecticut Lawsuit when Protegrity did not have a good faith basis for alleging that the Court had jurisdiction over Corduro.

In the Texas Lawsuit, Protegrity alleged that Corduro was willfully infringing and was indirectly infringing the patents-in-suit. Corduro moved to dismiss these allegations pursuant to Rule 12(b)(6) because Protegrity did not allege plausible facts to support these allegations. Ex. 10. Rather than argue in favor of its allegations or amend its complaint to allege facts to support its allegations, Protegrity simply dropped its claims for willful and indirect infringement. Ex. 11. Once again, Protegrity brought claims against Corduro without any factual support and Corduro was forced to incur fees to challenge Protegrity's baseless claims.

E.   **Protegrity Has Not Engaged in Good Faith Settlement Negotiations**

Counsel for Corduro reached out to Protegrity regarding settlement in October of 2014. Counsel for Corduro disclosed that Corduro's revenues associated with PayMobile were around $█████ and that prolonged litigation would be a waste of time and resources for both parties.

---

[1] ORDER. Because Plaintiffs have indicated that they are prepared to amend their complaint to assert additional jurisdictional allegations, Plaintiffs shall have until December 22, 2014 to file an amended complaint that includes all the additional jurisdictional allegations that Plaintiffs are able to plead, consistent with Rule 11, and sets forth all facts that Plaintiffs believe support the exercise of personal jurisdiction over this case. Should Plaintiffs file such an amended complaint, the Court will deny Defendant's [26] Motion to Dismiss without prejudice. Defendant may then file a renewed motion to dismiss that incorporates by reference any prior briefing. Discovery shall be stayed pending the Court's ruling on the merits of Defendant's motion to dismiss. Signed by Judge Michael P. Shea on 12/8/14.

No.: 3:15-md-02600-JD                    –8–
CORDURO, INC.'S MOTION FOR ATTORNEYS' FEES

Hyland Decl., at ¶ 24. Counsel for Protegrity promised to follow up with a settlement offer, but did not do so. *Id.* Protegrity made its first settlement offer to Corduro on May 24, 2016 (after both patents-in-suit had been declared invalid). The offer was for a lump sum payment of $▇▇▇▇ in return for a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 18. Corduro responded that the proposed lump sum was about ten times Corduro's total revenue from the accused product. Protegrity never responded to this communication. Corduro tried again and again to explain to Protegrity that the low revenues from the accused PayMobile product were so low that a reasonable settlement made sense for both parties. Protegrity ignored or refused to respond to all attempts by Corduro to come to a reasonable settlement. As a result, Corduro spent far more

### F. Corduro's Requested Fees and Costs are Reasonable

The Court should award Corduro its reasonable attorneys' fees and costs totaling $▇▇▇▇▇▇ in attorneys' fees to date and $▇▇▇▇▇▇ in related costs to date. Ex. 1. The award Corduro seeks is reasonable given the circumstances of this litigation. The hourly rates charged by Munsch, Hardt, Kopf & Harr, Reid & Reige and by Barnes & Thornburg, LLP are substantially lower than typical hourly rates charged by large law firms for complex patent litigation cases.

Corduro has submitted a declaration from lead trial counsel Jon Hyland providing invoices and an explanation of the legal fees and expenses incurred by Corduro. If Corduro incurs further attorneys' fees or costs litigating this motion, those fees and costs should be added to the final award. Post-judgment interest should also be awarded pursuant to 28 U.S.C. § 1961.

### IV. CONCLUSION

Corduro has spent a significant amount of money defending against Protegrity's meritless action. Protegrity did not perform an adequate pre-suit investigation. Protegrity's substantive positions and litigation conduct were unreasonable. The Court should declare this case to be exceptional and should award Corduro its costs and reasonable attorneys' fees.

Dated: October 26, 2016

By: /s/Jon B. Hyland
Jon B. Hyland
BARNES & THORNBURG LLP
2100 McKinney Avenue, Suite 1250
Dallas, Texas 75201
Telephone: (214) 258-4123
Facsimile: (214) 258-4132
E-mail: jon.hyland@btlaw.com

*Attorney for Corduro, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2016 a true and correct copy of the foregoing document was filed and served electronically by this Court's CM/ECF system on all parties of record.

By:/s/ *Jon B. Hyland*
Jon B. Hyland

DMS 4433970v1

No.: 3:15-md-02600-JD                –10–
CORDURO, INC.'S MOTION FOR ATTORNEYS' FEES