John P. Bovich (SBN 150688)
Email: JBovich@ReedSmith.com
Jonah D. Mitchell (SBN 203511)
Email: JMitchell@ReedSmith.com
Paulo L. Sousa (SBN 288705)
Email: PSousa@ReedSmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
Informatica LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PROTEGRITY CORPORATION AND PROTEGRITY USA, INC., PATENT LITIGATION | No.: 3:15-md-02600-JD<br><br>**INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Date:       December 15, 2016<br>Time:       10:00 am<br>Location:  Courtroom 11, 19th Floor<br><br>Honorable James Donato |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## NOTICE OF MOTION

Defendant Informatica LLC ("Informatica") hereby moves the Court for a finding that this case is "exceptional" under 35 U.S.C. section 285 and for an award of its reasonable attorneys' fees and expenses.

This Motion is made pursuant to Federal Rule of Civil Procedure 54(d), Civil Local Rule 54-5, 35 U.S.C. section 285, and the Court's inherent authority and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of John P. Bovich, the Declaration of Paulo L. Sousa, all pleadings and paper on file in this action and such further evidence that may be submitted to the Court.

No.: 3:15-md-02600-JD                – i –

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I . INTRODUCTION ........................................................................................................1

II . FACTUAL BACKGROUND ........................................................................................2

    A.    As Part of Its Litigation Campaign Against Over Twenty Defendants, Protegrity Targets Informatica With a Generic Complaint Devoid of an Adequate Pre-Suit Investigation ....................................................................2

    B.    Protegrity's Bad Faith Litigation Continues With Its Efforts to Manufacture Evidence to Secure Its Desired Forum and Its Settlement Misconduct ................................................................................................3

    C.    The PTAB Invalidates the Patents-in-Suit Following Multiple CBM Reviews ...................................................................................................5

III . LEGAL ANALYSIS ................................................................................................9

    A.    Legal Standard ....................................................................................9

    B.    Informatica is the Prevailing Party under 35 U.S.C. section 285 ...............10

    C.    This Case is Exceptional Because Protegrity's Assertion of the Patents-in-Suit was Objectively Unreasonable ........................................................10

    D.    This Case is Exceptional Because Protegrity Unreasonably Litigated Against Informatica ................................................................................11

    E.    Informatica Should Be Awarded Its Reasonable Fees and Expenses ..........13

IV . CONCLUSION........................................................................................................15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty, Ltd. v. CLS Bank International*,
    134 S. Ct. 2347 (2014) ....................................................................................................1, 5

*Apotex, Inc. v. UCB*,
    No. 0:12-cv-60706, 2015 U.S. Dist. LEXIS 176573 (S.D. Fl. Dec. 4, 2015) ..............................15

*Automated Business Co., Inc. v. NEC America, Inc.*,
    202 F.3d 1353 (Fed. Cir. 2000)........................................................................................14

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983)........................................................................................13

*City of Burlington v. Dague*,
    505 U.S. 557, 112 S. Ct. 2638, 120 L.Ed.2d 449 (1992) ........................................................15

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)........................................................................................12

*Deep Sky Software, Inc. v. Southwest Airlines Co.*,
    No. 10-cv-1234-CAB (KSC), 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015)...........................13

*Edekka LLC v. 3balls.com, Inc.*,
    2:15-CV-585 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) ............................................10

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011)........................................................................................12

*Garfum.com Corp. v. Reflections By Ruth d/b/a Bytephoto.com*,
    No. CV 14-5919, 2016 WL 1242762 (D.N.J. Mar. 30, 2016) ....................................................11

*IA Labs CA v. Nintendo Co.*,
    No. CIV. PJM 10-833, 2012 WL 1565296 (D. Md. May 1, 2012) ............................................13

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
    112 F. Supp. 3d 888 (D. Minn. 2015) ................................................................................12

*Inland Steel Co. v. Ltv Steel Co.*,
    364 F.3d 1318 (Fed. Cir. 2004)........................................................................................10

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
    No. CV 14-448-GMS, 2016 WL 3090633 (D. Del. May 31, 2016).............................................10

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
    No. 12-1138-SLR, 2016 U.S. Dist. LEXIS 43252 (D. Del. Mar. 13, 2016)..................................15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: 3:15-md-02600-JD       – iii –

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

*Kellogg v. Nike, Inc.*,
  2009 WL 3165529 (D. Neb. Sept. 30, 2009) .................................................................12

*Kerr v. Screen Extras
  build, Inc.*, 536 F.2d 67 (9th Cir. 1975) .....................................................................14

*Kilopass Tech., Inc. v. Sidense Corp.*,
  82 F. Supp. 3d 1154 (N.D. Cal. 2015) .........................................................................15

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
  No. 2015-2040, 2016 WL 6123901 (Fed. Cir. Oct. 20, 2016).....................................11

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012).....................................................................................14

*Mathis v. Spears*,
  857 F.2d 749 (Fed.Cir. 1988)......................................................................................15

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  726 F.3d 1359 (Fed. Cir. 2013)...................................................................................12

*Nikko Materials USA, Inc. v. R.E. Serv. Co.*,
  No. 03-2549 SBA, 2006 WL 118438 (N.D. Cal. Jan. 13, 2006) ...........................13, 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ...........................................................................1, 2, 9, 10, 13

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
  840 F.2d 1565 (Fed. Cir. 1988)...................................................................................13

*Segan LLC v. Zynga Inc.*,
  131 F.Supp.3d 956 (N.D. Cal. 2015) ..........................................................................15

*Source Search Techs., LLC v. Kayak Software Corp.*,
  No. 11-3388, 2016 WL 1259961 (D.N.J. Mar. 31, 2016) ............................................11

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
  753 F.3d 1291 (Fed. Cir. 2014)...................................................................................12

*Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.*,
  549 F.3d 1381 (Fed. Cir. 2008)..............................................................................14, 15

## Statutes

28 U.S.C. § 1961 .....................................................................................................................15

35 U.S.C. § 101 ...................................................................................................1, 5, 9, 10, 11

35 U.S.C. § 285 .........................................................................................9, 10, 13, 14, 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Other Authorities**

U.S. Patent No. 6,321,201 .................................................................................................2, 6, 7

U.S. Patent No. 8,402,281 ................................................................................................2, 5, 14

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1751 (2014), the Supreme Court held that a case should be declared exceptional and attorneys' fees awarded where a litigant has taken unreasonable substantive positions or litigated a case in an unreasonable manner. When a case, like this one, separates itself from the crowd, the prevailing party is entitled to be made whole by recovering the reasonable fees and expenses related to the action. This is precisely the kind of case the Supreme Court had in mind. Protegrity Corporation ("Protegrity") pursued this action even though it was substantively devoid of merit, and its litigation conduct was unreasonable as well.

Indeed, Protegrity knew that the substantive claims underlying this lawsuit lacked merit by at least Fall 2014, when a number of defendants filed a series of Covered Business Method ("CBM") petitions seeking to invalidate the patents-in-suit. It was clear that Protegrity's data processing patents would not survive a subject matter eligibility challenge under 35 U.S.C. section 101 and the Supreme Court's decision in *Alice Corp. Pty, Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), but Protegrity unreasonably continued to pursue this action anyway. In fact, aware that its patents were doomed, Protegrity attempted to redraft the claims during the CBM proceedings so they would appear more "technical" and thereby escape *Alice*. But in doing so, Protegrity proffered a claim construction of the term "database" that not only directly contradicted the intrinsic evidence, but also Protegrity's own agreed construction of that term in prior litigation. In its desperate bid to save its patents, Protegrity resorted to arguing that the construction to which it had previously agreed was now "unreasonable." Unsurprisingly, the PTAB rejected Protegrity's claim construction gambit and saw the patents for what they are: an attempt to patent the abstract concept of determining access to data based on rules. The PTAB thus invalidated the patents as ineligible under 35 U.S.C. section 101 in seven, separate Final Written Decisions.

In addition to the substantive lack of merit to its case, Protegrity's litigation conduct was unreasonable. Protegrity targeted Informatica LLC ("Informatica"), along with twenty-four other defendants in its litigation campaign, with the aim of exploiting the high cost of defending patent

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

litigation to extract settlement concessions.  To attempt to maximize its leverage, Protegrity initiated suit in the District of Connecticut, a distant forum with no connection to the patents or the parties. After Informatica moved to transfer, Protegrity tried to manufacture venue by alluding to an "exclusive license" with its Connecticut-based subsidiary.  Unsurprisingly, the District of Connecticut rejected this gambit as well, finding that "[t]he only evidence of the existence of an exclusive license agreement is a one-sentence declaration of Protegrity's former CFO, and other evidence suggests that any license was not exclusive."

The forum defects were not the only problems with Protegrity's suit.  Protegrity's generic complaint against Informatica failed to identify an accused product and was not supported by an adequate pre-suit investigation.  Tellingly, when Informatica insisted that Protegrity identify an accused product, as the law required it to do, Protegrity responded by asking Informatica to provide it with product documentation (which was publicly available).  To date, Protegrity has refused to provide any evidence demonstrating that it conducted an adequate pre-suit investigation.

The Court's discretion to award fees exists for sound reasons.  *Octane Fitness* empowers the Court to find "exceptional" any case that "stands out from others with respect to the substantive strength of a party's litigating position (concerning both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 134 S. Ct. at 1756. Here, both Protegrity's substantive positions and the manner in which it litigated its claims were unreasonable.  Thus, Informatica respectfully requests that the Court award Informatica its reasonable attorneys' fees of $1,005,231 to date and related expenses of $232,888, for a total amount of $1,238,119.

## II.  FACTUAL BACKGROUND

### A.    As Part of Its Litigation Campaign Against Over Twenty Defendants, Protegrity Targets Informatica With a Generic Complaint Devoid of an Adequate Pre-Suit Investigation

Based in the Cayman Islands, Protegrity's business is the enforcement of its patents.  [*See* Declaration of Paulo L. Sousa ("Sousa Decl."), Ex. U at p. 2.]  To that end, Protegrity filed this lawsuit against Informatica in September 2013, alleging infringement of U.S. Patent Nos. 8,402,281 ("the '281 patent") and 6,321,201 ("the '201 patent") (collectively, the "patents-in-suit").

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

1   [Declaration of John P. Bovich ("Bovich Decl."), Ex. B.]  Informatica was just one of Protegrity's

2   twenty-five litigation targets.  [Sousa Decl., Ex. MM.]  All told, Protegrity has sued or been sued by

3   declaratory judgment complainants in approximately fifty-two lawsuits involving the patents-in-

4   suit.[1]  [Id.]

5           The generic complaint Protegrity filed against Informatica is the same one that it filed against

6   other defendants, simply swapping out Informatica's name for another defendant's and relying on

7   the same boilerplate, "on information and belief" infringement allegations it made against all.

8   [Compare, e.g., Bovich Decl., Ex. B with Sousa Decl., Ex. B.]  Indeed, Protegrity did not even

9   identify any accused product in its complaint against Informatica.  [Bovich Decl., Ex. B.]  And when

10  Informatica demanded that Protegrity provide this information, Protegrity responded by asking

11  Informatica for "user manuals, architectural diagrams, functional specifications" concerning

12  Informatica's products.  [See Bovich Decl., Exs. C - D.]  But the type of information Protegrity

13  requested was publicly available, and thus Protegrity would have had access to it before it filed its

14  complaint had it bothered to look.  [Sousa Decl., Exs. NN - QQ.]

15          Eventually, Protegrity filed an amended complaint that identified an accused product, but

16  even then, Protegrity refused to identify which claims of the patents-in-suit were allegedly infringed.

17  [Bovich Decl., Ex. F and ¶ 47.]  To date, despite Informatica's requests, Protegrity has never

18  identified a single asserted claim or disclosed any infringement theory.  [Id., ¶ 47.]  Protegrity also

19  has never provided any evidence confirming that it conducted a pre-suit investigation, despite

20  Informatica's repeated requests, including pursuant to this Court's Settlement Conference Order

21  (requiring an informal exchange of necessary information).  [Id., Ex. G and ¶¶ 50-54.]

22  **B.**     **Protegrity's Bad Faith Litigation Continues With Its Efforts to Manufacture Evidence to Secure Its Desired Forum and Its Settlement Misconduct**

23          Protegrity's vexatious litigation conduct continued as the case progressed.  Protegrity filed

24  this suit in Connecticut, a distant and therefore expensive forum that had no relevant connection to

25

26

27  ────────────

    [1] Only three of those actions remain, pending solely to resolve the issue of recovery of defendants' attorneys' fees and expenses.  [See Dkt. No. 110.]

28

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    the patents, California-based Informatica or Cayman Islands-based Protegrity.  Thus, Informatica

2    immediately moved to transfer to this District, where it is headquartered.  [Sousa Decl., Ex. C.]

3          In opposition, Protegrity attempted to manufacture contacts with Connecticut by arguing that

4    it had granted to its Connecticut-based subsidiary, Protegrity USA, Inc. ("Protegrity USA"), an

5    exclusive license giving "all substantial rights" to the patents-in-suit.   [*See id.*, Ex. J.]  But

6    Protegrity's "evidence" of the alleged exclusive license – not an actual agreement, but a one-

7    sentence declaration attesting to an agreement – was dubious, at best.   [*See id.*, Ex. K.]  And, the

8    purported exclusive license created a different problem for Protegrity: if the license really existed

9    (*i.e.*, if Protegrity USA really owned "all substantial rights" to the patents-in-suit), it meant that

10   Protegrity had no standing to sue.  [*Id.*, Exs. G and F at p. 2, fn. 1, pp. 9-10.]  Thus, Informatica (1)

11   moved to dismiss for lack of standing in Connecticut and (2) initiated a declaratory judgment action

12   against Protegrity USA in this District.  [*Id.*, Exs. G and E.]  Now facing a standing defect,

13   Protegrity changed course again, claiming that, contrary to its prior assertions, Protegrity USA did

14   not hold "all subtantial rights," and instead actually held "less than all substantial rights" to the

15   patents-in-suit.  [*Id.*, Ex. J at p. 3.]

16         Meanwhile, Protegrity's exclusive license theory unraveled in a related action in the District

17   of Connecticut.  There, the court rejected Protegrity's alleged exclusive license, expressing

18   skepticism of its existence and finding that, even if a license did exist, it was not exclusive.  [*Id.*, Ex.

19   K ("[T]he only evidence of the existence of an exclusive license agreement is a one-sentence

20   declaration of Protegrity's former CFO, and other evidence suggests that any license was not

21   exclusive.").]  The same court thereafter granted Informatica's motion to transfer to this Court,

22   finding that "Connecticut's connection is dwarfed by the Northern District of California's critical

23   role in this case."[2]  [*Id.*, Ex. H at p. 10.]

24         Undeterred, eight months later, Protegrity sought an end-run around the transfer order (and

25   transfer orders in related cases) by filing a motion for MDL consolidation back to Connecticut.  [*Id.*,

26

27   [2]  After its motion to transfer was granted, Informatica withdrew its motion to dismiss for lack of standing and its
     declaratory judgment action, but not before it was forced to spend time and money bringing them.

28

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  Ex. R.]  For the same reasons it should have never brought the cases in Connecticut, Protegrity's

2  MDL attempt also failed, and the cases were transferred to this Court.  [Dkt. No. 1.]

3      Protegrity's bad faith litigation tactics did not stop there.  Its settlement tactics prevented any

4  opportunity for resolution and needlessly protracted this litigation.  Indeed, Protegrity improperly

5  attempted to use this litigation to force a business deal with Informatica, even though Informatica

6  had told Protegrity it had no interest in such an arrangement.  [Bovich Decl., ¶¶ 41-42.]  When the

7  parties agreed to private mediation before the Honorable Edward Infante in January 2015 to comply

8  with the Court's ADR requirement, Informatica's Assistant General Counsel attended the mediation

9  with full authority to settle.  [Id., ¶¶ 48-49.]  Before it had even started, however, Protegrity's CEO,

10  Suni Munshani, walked out of the session because a "business person" was not attending from

11  Informatica.  [Id.]

**C.    The PTAB Invalidates the Patents-in-Suit Following Multiple CBM Reviews**

12

13      As it continued to defend against Protegrity's vexatious litigation in the courts, in the Fall of

14  2014, Informatica filed CBM reviews of the patents-in-suit, as did Defendants Square and Aptos

15  (f/k/a Epicor).  [Sousa Decl., Exs. L - Q and S.]  Those CBM proceedings ultimately ended

16  Protegrity's district court litigation campaign.  All told, the patents-in-suit have been the subject of

17  eight CBM petitions, resulting in seven Final Written Decisions invalidating the patents-in-suit as

18  ineligible under 35 U.S.C. section 101, among other grounds.[3]  [Id., Exs. FF - LL.]  These decisions

19  should have come as no surprise to Protegrity.  Indeed, under a straightforward application of the

20  two-step test for patent eligibility set forth in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347

21  (2014), the patents-in-suit are, on their face, directed to the abstract concept of granting access to

22  data based on whether one or more rules are satisfied, with no inventive concept sufficient to

23  transform that concept into a patent-eligible application.

24      Claim 33 of the '281 patent is representative of both patents, which share nearly identical

25  specifications:

26      33. A computer-implemented data processing method comprising:

27  _____

[3] As for the eighth petition, the petitioner, Voltage, settled with Protegrity and thus terminated the CBM review before a
Final Written Decision.  [Id., Ex. I.]

28

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

maintaining a database comprising a plurality of data portions, each data portion associated with a data category;
maintaining a separate data protection table comprising, for at least one data category, one or more data processing rules associated with the data category that must each be satisfied before a data portion associated with the data category can be accessed;
receiving a request to access a data portion associated with a first data category from a user;
determining whether each of the one or more data processing rules associated with the requested data portion are satisfied; and
granting the user access to the requested data portion responsive to each of the retrieved one or more data processing rules being satisfied.

The '201 patent claims add certain well-known aspects of pre-existing data processing methods, such as encryption and storing data as rows and columns in a database. [4]

The basic concept of the claims of both patents is simple and abstract.  The claims recite data processing methods with three basic limitations:  (1) storing data in a database; (2) storing, separately from the data, "processing rules" that control access to the data; and (3) when a user requests access to data, determining whether the processing rules allow the requested access and, if so, granting the requested access.

The following example demonstrates the claimed concept.  A first database contains a person's name and credit card number.  A second database contains rules that must be satisfied before the person's name or credit card number can be accessed.  When a request is made for the name, the second database is consulted (*e.g.*, Rule 1: All users may access Bob's name), and the data is processed accordingly (*e.g.*, Steve may read the data).  When a request is made for the credit card number, the second database is again consulted (*e.g.*, Rule 2: only Bob may access his own credit card number) and the data is processed accordingly (*e.g.*, Steve may not read the data).

Thus, as the PTAB found at *Alice* step one, the claims are "directed to the abstract idea of determining whether access to data should be granted based on whether one or more rules are satisfied." [Sousa Decl., Ex. JJ at p. 32, Ex. KK at p. 29.]  And, as the PTAB found at *Alice* step two, the claims do not recite additional elements that transform the claim into a patent-eligible application of an abstract idea, because they simply recite well-known and conventional activity and

---

[4]  Neither patent purports to invent any type of encryption, but rather incorporates pre-existing encryption algorithms. [Sousa Decl., Ex. JJ at pp. 38-40, Ex. KK at pp. 34-35, 37.]

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    features.  [*Id.*, Ex. JJ at pp. 33-40, Ex. KK at pp. 33-35.]  For example, with respect to claim 33, the

2    PTAB found that: (1) the recited computers with separate databases were well-known and

3    conventional; (2) storing data and associated rules in separate databases is nothing more than routine

4    data gathering; (3) receiving a request to access a data portion and determining whether the data

5    processing rules associated with that data portion are satisfied was routine and conventional; and (4)

6    granting access to requested data was merely a conventional post-solution activity.  [*Id.*, Ex. JJ at pp.

7    34-35.]

8            Before the PTAB reached its decisions, however, Protegrity tried to avoid invalidation under

9    *Alice* by proffering a claim construction that contradicted both the intrinsic evidence and Protegrity's

10   own claim construction in prior district court litigation.  In the prior litigation, before *Alice* and while

11   it was focused on infringement issues, Protegrity had agreed that the claim term "database" means

12   "an organized collection of structured data."  [*Id.*, Ex. A at p. 2.]  The intrinsic evidence supports

13   Protegrity's prior construction.  The specification discloses that Figure 3 (reproduced below)

14   "schematically illustrates a data managing system, in which the present invention is implemented

15   and in which the following databases [PDB, ODB, A-DB, and IAM-DB] are included **for storing**

16   **information**."  U.S. Patent No. 6,321,201 at 5:44-47 (emphasis added).  The system consists of

17   these four databases, hardware component 10, application 40, control module 20, and program

18   module 30.  *Id.* at 5:49-6:51.  The specification further discloses that control module 20 "**controls**

19   the handling of the types of data protection that the system can supply" and "carries out the

20   **processing** requested, while program module 30 "**handles** the dialogue between the application 40

21   involved (including ACS) and the hardware component 10."  *Id.* at 6:35-43 (emphasis added).  Thus,

22   Protegrity previously agreed, and the original disclosure supports, that the databases simply store

23   data, while the separate "modules" perform the necessary processing.

Fig. 3

Once faced with *Alice* and multiple CBM petitions, Protegrity changed its claim construction position in an effort to make the claims seem less abstract. Among other things, Protegrity argued for the first time that "database" means "a data processing system for managing an organized collection of structured data." [*See, e.g.*, Sousa Decl., Ex. AA at p. 16.] In other words, Protegrity argued that the database did not simply store data, but that it performed processing as well. As for the broader definition to which it had agreed in the prior litigation, in the CBM reviews Protegrity now claimed that construction was "unreasonable." [*Id.*, Ex. AA at pp. 20, 21 and 25.]

The PTAB rejected Protegrity's attempt to circumvent *Alice* through its proposed construction of "database" for several reasons. First, as the PTAB found, Protegrity's new construction directly contradicted the intrinsic evidence because the patents do not disclose that the "databases" are a "data processing system," let alone that they "manag[e]" anything. [*See, e.g.*, Sousa Decl., Ex. JJ at pp. 10-12.] Among other things, the PTAB observed that the claims themselves "do not recite that the database performs any other function, other than the storage of data," and that the disclosure of the patents "does not describe the O-DB database, or any other database, as performing any other data processing or managing functions."[5] [*Id.*, Ex. JJ at pp. 9-10.] Second, Protegrity's new construction directly contradicted its own prior construction of "database."

---

[5] The PTAB also discounted the testimony of Protegrity's witnesses because (1) it was "inconsistent with the [patents-in-suit]" and (2) the features they argued should be covered by the claims are not found in the patents. [*Id.*, Ex. JJ at pp. 11-12.]

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

[*Id.*, Ex. JJ at p. 15 (PTAB construing "database" to mean "any organization of structured data," which is "consistent with…the position taken by Patent Owner in the related district court proceeding.").]  Finally, Protegrity's new, narrower construction was contrary to PTAB law, which requires claims to be construed under the broadest reasonable interpretation.  [*Id.*, Ex. JJ at pp. 8 and 15.]

Thus, as expected, the PTAB found that both patents are directed to abstract concepts related to determining access to data based on rules and lack an inventive concept sufficient to transform that abstract idea into a patent-eligible application.  [*Id.*, Exs. JJ - KK.]  The PTAB's Final Written Decisions merely confirmed what Protegrity knew or should have known by at least Fall 2014 in the wake of *Alice* and seven CBM petitions:  the patents-in-suit were not patent eligible under section 101.  [*Id.*, Exs. FF - LL.]

Despite that knowledge, Protegrity refused to reconsider its litigation strategy.  Indeed, it was not until after the PTAB invalidated the patents-in-suit in seven PTAB Final Written Decisions, and after Informatica already spent substantial fees and expenses in both the CBM proceedings and this action, that Protegrity finally stipulated to invalidity.  [Dkt. No. 103.]  This Court thereafter entered judgment in Informatica's favor, finding the patents-in-suit invalid.  [Dkt. No. 106.]

## III.  LEGAL ANALYSIS

### A.  Legal Standard

In a patent case, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness,* 134 S. Ct. at 1756.  While there is no precise rule or formula for finding a case exceptional, the Supreme Court has identified a non-exclusive list of factors a district court may consider in evaluating whether a case is exceptional, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at n.6.  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion,

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    considering the totality of the circumstances." *Id.* at p. 1758.  An "exceptional case" finding need

2    only be supported by a preponderance of the evidence. *Id.*

3    **B.      Informatica is the Prevailing Party under 35 U.S.C. section 285**

4            To qualify as a prevailing party under section 285, that party must "receive at least some

5    relief on the merits" which "alters . . . the legal relationship of the parties." *Inland Steel Co. v. Ltv*

6    *Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004).  Here, Informatica is the prevailing party.  The

7    PTAB invalidated all claims of the patents-in-suit, this Court issued a Judgment of Invalidity

8    invalidating all claims of the patents-in-suit and Protegrity waived all appellate rights in connection

9    with the patents-in-suit.  [*See* Dkt. No. 106]; s*ee also Inland Steel*, 364 F.3d at 1319–21 (finding

10   defendant was the prevailing party in district court case under section 285 after the patent office

11   rejected the asserted claims during a reexamination proceeding).

12   **C.      This Case is Exceptional Because Protegrity's Assertion of the Patents-in-Suit was
             Objectively Unreasonable**

13

14           This case is exceptional because the patents-in-suit are objectively invalid as ineligible under

15   section 101, and no reasonable litigant could have concluded otherwise in the post-*Alice* legal

16   landscape.  Protegrity was on notice that the patents-in-suit were likely invalid under section 101 by

17   at least the Fall of 2014, when seven CBM petitions were filed in the wake of *Alice* (including those

18   by Informatica).  Protegrity had a duty to reevaluate its infringement case at that time, but instead

19   chose to press on for two more years with its meritless litigation.  Protegrity's unreasonable assertion

20   of patents that are objectively ineligible on their face warrants the imposition of attorneys' fees and

21   expenses. *See Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. CV 14-448-GMS, 2016 WL

22   3090633, at *3 (D. Del. May 31, 2016) (awarding attorneys' fees from date *Alice* issued, holding

23   "regardless of whether [patentee] initially felt that it had a plausible claim, [patentee] had an

24   obligation to reevaluate its case in light of subsequent decisions [including *Alice*]"); *Edekka LLC v.*

25   *3balls.com, Inc.*, 2:15-CV-585 JRG, 2015 WL 9225038, at *3 (E.D. Tex. Dec. 17, 2015) (finding

26   case exceptional and awarding fees where "no reasonable litigant could have reasonably expected

27   success on the merits" of claim alleging infringement of ineligible patent).

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

The unreasonable claim construction Protegrity advanced during the CBM reviews further confirms the exceptionality of this case.  Because Protegrity knew that the claims could never survive an *Alice* challenge if construed in accordance with the intrinsic evidence, Protegrity proffered a frivolous construction of "database" that not only contradicted its own construction of that term in prior litigation, but also contradicted the patent language.  Further demonstrating the objectively unreasonable nature of its new claim construction, Protegrity inexplicably disavowed its prior construction as "unreasonable."

The objective unreasonableness of Protegrity's PTAB claim construction of "database" during the CBM proceedings belies any suggestion that it did not know its patents-in-suit were invalid under section 101 and confirms that this case is exceptional.  *See, e.g., Garfum.com Corp. v. Reflections By Ruth d/b/a Bytephoto.com*, No. CV 14-5919 (JBS/KMW), 2016 WL 1242762, *7-8 (D.N.J. Mar. 30, 2016) (finding case exceptional and awarding fees where plaintiff attempted to add "non-conventional, non-generic limitations" "against the plain text of the patent" and where it "should have been obvious to the Plaintiff in the post-*Alice* environment" that the patent provided no inventive concept); *Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-3388 (NLH/KMW), 2016 WL 1259961, at *10 (D.N.J. Mar. 31, 2016) (awarding attorneys' fees from date of *Alice* motion in view of plaintiff's "changing positions again in order to try and save the validity of the patent [under section 101]"); *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 2015-2040, 2016 WL 6123901, n.3 (Fed. Cir. Oct. 20, 2016) (unreasonable claim construction positions offered during PTAB proceedings may properly be considered in determining whether a case is exceptional).

**D.    This Case is Exceptional Because Protegrity Unreasonably Litigated Against Informatica**

In addition to the substantive lack of merit to its case, Protegrity's unreasonable litigation conduct also supports an exceptional case finding here.  To date, Protegrity has never identified the claims it contends Informatica infringed, any infringement theory, or any evidence of a pre-suit investigation.  "A patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

1    proving infringement." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1302 (Fed.

2    Cir. 2014) (quotations omitted) (holding in Rule 11 context that a declarant's conclusory statements

3    that a pre-suit infringement analysis had been performed was not evidence to support a reasonable

4    belief by plaintiff that it had a meritorious infringement claim).  The lack of evidence of any pre-suit

5    investigation suggests that this lawsuit was unfounded from its inception.  *See Eon-Net LP v.*

6    *Flagstar Bancorp*, 653 F.3d 1314, 1328–29 (Fed. Cir. 2011) (affirming award of attorneys' fees and

7    finding no adequate pre-suit investigation where patentee's counsel merely examined website and

8    concluded infringement).

9            Protegrity's improper efforts to secure its desired forum also support an exceptionality

10   finding.  Specifically, Protegrity: (1) filed suit in Connecticut even though there were no relevant

11   contacts with that forum; (2) attempted to manufacture forum contacts, after Informatica challenged

12   venue, by asserting a sham exclusive license that purportedly gave "all substantial rights" in favor of

13   Protegrity USA; (3) backtracked on its assertion of the "all substantial rights" license grant after

14   Informatica raised the standing defect this created, and re-characterized the grant as "less than all

15   substantial rights"; and (4) after it lost the motion to transfer, moved for MDL consolidation back to

16   Connecticut only to fail again for the very same reasons.  These unreasonable tactics delayed this

17   action by a year and a half and forced Informatica to incur unnecessary attorneys' fees and expenses

18   litigating these issues across three venues, including through Informatica's (1) motion to transfer, (2)

19   motion to dismiss for lack of standing, (3) declaratory judgment action, and (4) opposition to motion

20   for multi-district litigation.  Thus, Protegrity's unreasonable venue tactics independently warrant an

21   exceptional case finding.  *See, e.g., Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp.

22   3d 888, 896 (D. Minn. 2015) (finding "[t]he inclusion of a peripheral party to establish venue in an

23   inconvenient and high-cost district" to be "highly suspicious" and "more likely than not that the

24   reason … was to increase litigation costs."); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726

25   F.3d 1359, 1367 (Fed. Cir. 2013) (affirming exceptional designation and fee award where, *inter alia*,

26   party made misrepresentations and filed baseless motions); *Kellogg v. Nike, Inc.*, 2009 WL 3165529,

27   at *12 (D. Neb. Sept. 30, 2009) ("inten[tion] to delay the proceedings, obfuscate the issues and

28   increase [...] litigation costs" justified award of attorneys' fees); *Computer Docking Station Corp. v.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    *Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) ("If the patentee prolongs litigation in bad faith, an

2    exceptional finding may be warranted.").

3            Protegrity's unreasonable settlement tactics likewise support an exceptional case finding.

4    Protegrity improperly attempted to leverage its litigation into a business deal with Informatica.  But

5    Informatica was never interested in a "business deal" with Protegrity and thus had no choice but to

6    litigate.  And, when Informatica prepared and came to the Court-ordered private mediation with full

7    authority to settle, Protegrity improperly walked out before the mediation even started because a

8    "business person" from Informatica did not attend.  Such tactics demonstrate that Protegrity's

9    motivation in continuing this litigation had little to do with the merits of the case.  *Octane Fitness*,

10   134 S. Ct. at 1756 n.6 ("in determining whether to award fees . . . district courts [may] consider . . .

11   'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of

12   the case) and the need in particular circumstances to advance considerations of compensation and

13   deterrence.'").

14   **E.      Informatica Should Be Awarded Its Reasonable Fees and Expenses**

15           The Federal Circuit "interpret[s] attorney fees [recoverable under section 285] to include

16   those sums that the prevailing party incurs in the preparation for and performance of legal services

17   *related to the suit*."  *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)

18   (emphasis added); *see also Nikko Materials USA, Inc. v. R.E. Serv. Co.*, No. 03-2549 SBA, 2006 WL

19   118438, *5 (N.D. Cal. Jan. 13, 2006) ("an award of all reasonable and necessary expenses related to

20   the litigation is properly within the scope of 35 U.S.C. § 285").  Thus, in addition to amounts

21   incurred for district court patent litigation, fees and expenses related to CBM reviews are

22   recoverable under section 285, particularly where, as here, they obviate the need for the district court

23   to address invalidity.  *See, e.g., Deep Sky Software, Inc. v. Southwest Airlines Co.*, No. 10-cv-1234-

24   CAB (KSC), 2015 WL 10844231, *2 (S.D. Cal. Aug. 19, 2015) (awarding fees under section 285 for

25   *inter partes* reexamination); *IA Labs CA v. Nintendo Co.,* No. CIV. PJM 10-833, 2012 WL 1565296,

26   *4 (D. Md. May 1, 2012) (awarding attorneys' fees related to reexamination proceedings); *PPG*

27   *Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988) (fees

28

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

1    awarded for reissue proceeding because reissue "substituted for the district court litigation on all

2    issues considered by the PTO and the Board").

3           The methodology for assessing a reasonable award under section 285 is within the court's

4    discretion.  *See Automated Business Co., Inc. v. NEC America, Inc.*, 202 F.3d 1353, 1355 (Fed. Cir.

5    2000).  The Ninth Circuit has identified the following factors which may be considered: (1) the time

6    and labor required, (2) novelty and difficulty of the questions involved, (3) the skill required to

7    perform the legal service properly, (4) the preclusion of other employment by the attorney due to

8    acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time

9    limitations imposed by the client or the circumstances, (8) the amount involved and the results

10   obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the

11   case, (11) the nature and length of the professional relationship with the client, and (12) awards in

12   similar cases.  *Nikko*, 2006 WL 118438 at * 6 (*citing Kerr v. Screen Extras build, Inc.*, 536 F.2d 67,

13   70 (9th Cir. 1975)).

14          Applying these factors here demonstrates that the award Informatica seeks is reasonable.

15   Informatica seeks fees and expenses totaling $1,238,119, including $445,436 in attorneys' fees and

16   $29,838 in expenses related to Protegrity's district court litigation against Informatica, and $559,795

17   in attorneys' fees and $203,049 in expenses related to the CBM proceedings.[6]  [Bovich Decl., ¶¶ 3-

18   38.]  As set forth in the declaration of John P. Bovich, the fees and expenses Infomatica seeks were

19   reasonably and necessarily incurred, and the amounts are reasonable under the lodestar approach.[7]

20

---

[6] The CBM fees also are reasonable and should be awarded because Protegrity's conduct increased the fees incurred.  For
example, Protegrity failed to follow the PTAB's rules in connection with the following CBM filings: (1) Motion to
Amend in the '281 CBM review [Sousa Decl., Ex. BB], (2) Observation on Cross-Examination of Reply Witness in both
CBMs [*Id.*, Exs. JJ and KK], and (3) Preliminary Response in the '281 CBM.  [*Id.*, Ex. T.]  In each of those instances,
the PTAB found that Protegrity had not abided by the CBM rules.  [*Id.*, Ex. V.]  Protegrity further increased CBM fees
by (1) protracting expert depositions with questions unrelated to the CBMs [*Id.*, Ex. Z], (2) forcing Informatica to
defend against '281 patent claims it then voluntarily cancelled [*Id.*, Ex. BB], and (3) a failed attempt at substituting those
claims with new claims.  [*Id.*]

[7] Informatica's expert expenses related to the CBMs (included in the $203,049) are recoverable under this Court's
inherent authority due to Protegrity's bad faith litigation tactics described above.  *See, e.g., Takeda Chemical Industries,
Ltd. v. Mylan Laboratories, Inc.*, 549 F.3d 1381, 1390-91 (Fed. Cir. 2008) (affirming award of expert fees under inherent
authority because of "appellant's bad faith and vexatious litigation conduct"); *MarcTec, LLC v. Johnson & Johnson*, 664
F.3d 907, 921 (Fed. Cir. 2012) (affirming award of expert fees under inherent authority because "there was bad faith,
such as the filing of a frivolous action").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   [*Id.*, ¶¶ 5-24 and 39-59]; *see also City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638,

2   120 L.Ed.2d 449 (1992) (confirming strong presumption that the lodestar represents the reasonable

3   fee).  The Reed Smith attorneys who represented Informatica in this matter are experienced patent

4   litigators, and the rates Reed Smith charged are comparable to those charged by peer law firms and

5   reasonable.  [Bovich Decl., ¶¶ 9-19]; *see also Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d

6   1154, 1171 (N.D. Cal. 2015) (finding $750-830 hourly rates for senior litigation partner reasonable).

7           Similar and even greater awards issued by courts under section 285 further confirm the

8   reasonableness of Informatica's requested award here.  *See Takeda Chemical Industries*, 549 F.3d at

9   1385, 1390-91 (Fed. Cir. 2008) (affirming $16,800,000 fee and expense award); *Apotex, Inc. v.*

10  *UCB*, No. 0:12-cv-60706, 2015 U.S. Dist. LEXIS 176573, *7 (S.D. Fl. Dec. 4, 2015) (finding case

11  exceptional and awarding $5,336,391 in attorneys' fees and expenses); *Segan LLC v. Zynga Inc.*,

12  131 F.Supp.3d 956, 963 (N.D. Cal. 2015) (finding case exceptional and awarding $1,188,773 in fees

13  where plaintiff's litigation positions and theories were untenable from outset of case); *Joao Bock*

14  *Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 12-1138-SLR, 2016 U.S. Dist. LEXIS

15  43252, at *11 (D. Del. Mar. 13, 2016) (awarding attorneys' fees of $1,000,000 under section 285).

16  Moreover, Informatica's requested award is well below the median cost of defending similar patent

17  litigation, as documented in the American Intellectual Property Association's ("AIPLA") 2013

18  Report.  [Bovich Decl., Ex. H (median cost of litigating a patent infringement suit in San Francisco

19  in 2013 with $1-$25 million at risk was $3.583 million inclusive of all fees and expenses).].

20          Finally, should Informatica incur further attorneys' fees or expenses litigating this motion,

21  those fees and expenses should be added to the final award.  *Mathis v. Spears*, 857 F.2d 749, 756

22  (Fed.Cir. 1988).  Post-judgment interest also should be awarded pursuant to 28 U.S.C. section 1961.

23  *Id.*

24                              **IV.  CONCLUSION**

25          Protegrity forced Informatica to expend significant fees and costs in defending against this

26  meritless action.  Because Protegrity's substantive positions and litigation conduct were

27  unreasonable, this case should be declared exceptional and Informatica should be awarded its

28  attorneys' fees and expenses.

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Dated:  October 26, 2016                    REED SMITH LLP


                                     By: /s/ *John P. Bovich*
                                        John P. Bovich (SBN 150688)
                                        Jonah D. Mitchell (SBN 203511)
                                        Paulo L. Sousa (SBN 288705)
                                        Attorneys for Defendant
                                        Informatica Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2016 a true and correct copy of the foregoing document was filed and served electronically by this Court's CM/ECF system on all parties of record.

By: /s/ *Paulo L. Sousa*
     Paulo L. Sousa

No.: 3:15-md-02600-JD       – 17 –

INFORMATICA LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES/EXPS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware