United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: PROTEGRITY CORPORATION AND PROTEGRITY USA, INC. PATENT LITIGATION

Case No. 3:15-md-02600-JD

**ORDER RE ATTORNEYS' FEES**

Re: Dkt. Nos. 112, 114, 116

As the coda to this multidistrict patent litigation, defendants Aptos, Inc. ("Aptos"), Corduro, Inc. ("Corduro") and Informatica, LLC ("Informatica") seek to recover attorneys' fees from plaintiffs Protegrity Corporation and Protegrity USA, Inc. (together, "Protegrity") under 35 U.S.C. § 285. The motions are denied.

**BACKGROUND**

This consolidated litigation arises out of Protegrity's efforts to enforce two of its patents, U.S. Patent Nos. 6,321,201 and 8,402,281. The '201 patent was issued on November 20, 2001, and generally claims the invention of cell-level encrypted database technology that functions by allowing or disallowing access to an encrypted data element in one database based on calls to data access rules in a second database. Dkt. No. 127-2 ('201 Patent). The '281 patent was issued on March 19, 2013, is a continuation of the same application as the '201 patent and claims a substantially similar invention. Dkt. No. 127-3 ('281 Patent).

Between 2008 and 2010, Protegrity filed infringement cases asserting the '201 patent against three of its competitors. Dkt. No. 127-1 at 7-8. The first settled after five years of litigation, the second mid-trial, and the third "without much discovery." *Id.* At oral argument

here, Protegrity's counsel represented that the company had collected approximately $20,000,000 in the settlements.

After these successes, Ulf Mattsson, Protegrity's former CTO, was tasked with researching the encrypted database industry to identify other potential infringers of Protegrity's patents. *Id.* at 8. His investigation led to the filing of a number of lawsuits in several district courts, including the cases involving Aptos (formerly "Epicor Software Corporation"), Corduro and Informatica that are at issue here.

In 2014, Informatica, Aptos and another party petitioned the Patent Trial and Appeal Board ("PTAB") to do a Covered Business Method ("CBM") review of all the asserted claims of the '201 and '281 patents. Dkt. No. 37 at 1-2. On November 7, 2014, while venue challenges were underway in several of the underlying cases, Protegrity moved under 28 U.S.C. § 1407 to centralize all district court proceedings in the District of Connecticut, where Protegrity had originally filed its cases. On February 20, 2015, the Judicial Panel on Multidistrict Litigation consolidated the proceedings but transferred the cases to the Northern District of California and this Court. Dkt. No. 1 at 3.

The Court held an initial case management conference on April 1, 2015. Dkt. No. 17. With an eye toward containing litigations costs and avoiding potentially duplicative adjudications, the Court proposed, without objection by any party, to stay the consolidated actions in their entirety pending the PTAB's response to defendants' petitions to institute review. *Id.* Over the next three months, the PTAB instituted CBM reviews on all of the claims asserted by Protegrity. Dkt. No. 37 at 1-2. The Court extended the stay through the PTAB's completion of the CBM reviews. Dkt. No. 55. In 2016, the PTAB issued several Final Written Decisions invalidating the '201 and '281 patents primarily for lack of patent eligibility under 35 U.S.C. § 101. *See* Dkt. No. 84 at 2.

The Court held another case management conference on June 29, 2016, to solicit the parties' views on how to proceed in light of the PTAB determinations. Dkt. No. 91. Protegrity stated its intention not to appeal the PTAB decisions, and said it was in the process of dismissing

defendants. *Id*. Shortly after the conference, Protegrity stipulated to a judgment of invalidity, Dkt. No. 103, which the Court entered on July 15, 2016. Dkt. No. 106.

While many defendants were content to walk away at this stage, five accused infringers, including the three moving parties here, expressed the intent to pursue attorneys' fees under Section 285 as prevailing parties in an "exceptional" patent case. The Court referred the issue to Magistrate Judge Donna Ryu for a settlement conference. Dkt. No. 107. Protegrity settled with two of the five accused infringers but not with Aptos, Corduro or Informatica. Dkt. No. 110. These defendants filed the separate motions for attorneys' fees that are the subject of this order. Dkt. Nos. 112, 114, 116. While the motions have unique fact details on some specific points, they raise largely overlapping arguments and so are treated together here.

**DISCUSSION**

The Patent Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In 2014, the Supreme Court overturned the Federal Circuit's "rigid and mechanical formulation" of rules governing fee shifting under Section 285 that had been in effect since 2005. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1754 (2014) (overruling *Brooks Furniture Mfg., Inc. v. Dutailier Int'l Inc.*, 393 F.3d 1378 (Fed. Cir. 2005)). In lieu of the tests under *Brooks Furniture* of objective baselessness and subjective bad faith, to be proven by clear and convincing evidence, the Supreme Court held that the plain language of Section 285 "imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Id.* at 1755-56. Since the Patent Act did not define "exceptional," the Supreme Court adopted its everyday meaning of "rare," "unusual," or "special." *Id*. at 1756. It added the guidance that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

The district court determines whether an action qualifies as exceptional in light of the totality of the circumstances in each case. *Id.* Relevant factors include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components

of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). A preponderance of the evidence standard applies, *id.* at 1758, and the disposition of the fee request is entrusted to the district court's sound discretion. *Highmark Inc. v. Allcare Health Mgt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014); *Site Update Solutions LLC v. CBS Corp.*, 639 Fed. App'x. 634, 637 (Fed. Cir. 2016).

While *Octane Fitness* replaced the Federal Circuit's strict tests with a more discretionary inquiry, it did not declare an open season for fee awards in every case where the defendant prevails. The "American Rule" -- where each litigant bears its own fees, win or lose -- remains a bedrock principle. *Octane Fitness*, 134 S. Ct. at 1753. Section 285 allows for a departure from that rule only in rare and exceptional circumstances. *Id*. at 1756; *see also Stragent, LLC v. Intel Corp.*, Case No. 6:11-cv-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, Circuit Judge, sitting by designation). To be sure, conduct need not be independently sanctionable to warrant fee shifting. *Octane Fitness*, 134 S. Ct. at 1756-57. But the totality of the circumstances must show that a case was egregious on the merits or in the way it was handled, or in some combination of the two.

Congress created an exception to the usual fee rule in patent cases for a specific reason. As the Federal Circuit has held, "Congress authorized awards of attorney fees to prevailing defendants 'to enable the court to prevent a *gross injustice* to an alleged infringer.'" *Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988) (quoting S. Rep. No. 1503, 79th Cong, 2d Sess. (1946)) (emphasis in *Mathis*); *see also Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1373 (Fed. Cir. 2012) (Congress codified § 285 "to make a prevailing defendant 'whole' following a gross injustice") (Reyna, J., concurring) (citation omitted); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) ("§ 285 is limited to circumstances in which it is necessary to prevent 'a gross injustice' to the accused infringer.") (citation omitted). *Octane Fitness* reinforces this message. As Judge Dyk has noted, it cites with approval a Ninth Circuit decision holding that fee shifting in patent cases should be "bottomed upon a finding of unfairness" or a similar equitable consideration, "which makes it grossly unjust that the winner of

the particular lawsuit be left to bear the burden of his own counsel fees which prevailing litigants normally bear." *Stragent*, 2014 WL 6756304, at *3 (quoting *Park-In-Theaters, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)); *see also Octane Fitness*, 134 S. Ct. at 1753. While the current text of Section 285 is an amendment of the original version of the fee shifting provision in the Patent Act, "the recodification did not substantively alter the meaning of the statute," *Octane Fitness*, 134 S. Ct. at 1753, and Congress's original purpose remains an important factor in applying it.

Two other points deserve emphasis. Fee shifting is not imposed as a penalty just for losing a patent infringement case. *Octane Fitness*, 134 S. Ct. at 1753; *SFA Systems, LLC v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) ("A party's position on issues of law ultimately need not be correct for them to not 'stand[] out,' or be found reasonable.") (citation omitted). The determinative test is "the substantive *strength* of a party's litigating position" and specifically whether it was "so merit-less as to 'stand out' from the norm and, thus, be exceptional." *SFA Systems*, 793 F.3d at 1348 (quoting *Octane Fitness*, 134 S. Ct. at 1756) (emphasis in *SFA Systems*). A "losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith." *Stragent*, 2014 WL 6756304, at *4.

In addition, the facts that brand a case as exceptional should be fairly visible in the record. "[E]vidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes." *SFA Systems*, 793 F.3d at 1348-49 (citation omitted). This is a crucial point for the fair and efficient disposition of fee requests under Section 285. Patent cases are often litigated over several years. They involve not only the usual civil discovery and motion practice issues, but also, in this district and many others, special procedures for disclosing infringement and invalidity contentions and handling claim construction, and a panoply of legal and factual issues specific to patent disputes. Section 285 is not an invitation to rehash all of the gory details of this work. The "Supreme Court did not intend to burden the district court in reviewing in detail each position and each action taken in the course of litigation by the losing party." *Stragent*, 2014 WL 6756304, at *3. A fee motion should not force the court to painfully

reconstruct the minutiae of old arguments or spend days poring over masses of conflicting declarations, transcripts and other evidence. An exceptional case should readily meet the eye.

Several decisions in this district illustrate the point. In *IPVX Patent Holdings, Inc. v. Voxernet LLC*, the court awarded fees to the defendant after finding that the plaintiff performed no presuit investigation whatsoever, advanced an infringement position that was "objectively baseless," made "absurd and farfetched" arguments at claim construction, and proceeded through summary judgment "without developing any factual record to support its infringement contentions." Case No. 5:13-cv-01708 HRL, 2014 WL 5795545, at *5-7 (N.D. Cal. Nov. 6, 2014). In *Logic Devices, Inc. v. Apple Inc.*, the court awarded fees to the defendant after plaintiff's counsel filed and litigated a complaint he did not draft, failed to comply with the patent local rules, made a categorically false statement to the court about a crucial issue in the case, and then waited until the case had been pending for nearly a year before correcting it. Case No. 13-02943 WHA, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014). And in *Kilopass Tech. Inc. v. Sidense Corp.*, the court shifted fees after the plaintiff sued for literal infringement despite a presuit investigation that "essentially consisted of getting an opinion from one counsel that there was no literal infringement and getting an incomplete opinion from a different counsel as to infringement under the doctrine of equivalents." Case No. 10-02066 SI, 2014 WL 3956703, at *14 (N.D. Cal. Aug. 12, 2014). In all of these cases, which are by no means an exhaustive sample, the conduct warranting fee shifting was reasonably clear in the record and did not require a burdensome round of fact-finding to determine.

In light of *Octane Fitness* and the other guidance detailed here, the Court is unpersuaded that this case warrants a fee award to the prevailing defendants. This conclusion is based on the totality of circumstances in the record before the Court, parsed here for discussion purposes in terms of the "unreasonable manner of litigation" and the "substantive strength" of the claims. *See SFA Systems*, 793 F.3d at 1347. These categories are not applied as rigid formulations but as helpful tools for weighing the totality of the circumstances.

Overall, the record establishes that Protegrity acted reasonably in litigating this case. Protegrity launched the lawsuits that became this consolidated action after it had recovered a

substantial amount of money from other parties in prior settlements. It drove the request for MDL coordination, and while it favored a different district, it embraced consolidation in this Court. Once here, Protegrity agreed to waive remand to the transferor courts and to remain here for trial and all other purposes. Dkt. No. 23 at 1. After defendants filed petitions with the PTAB for CBM review, Protegrity was generally cooperative about agreeing to stay all court proceedings, including discovery and motion practice. Dkt. Nos. 43, 55. When the PTAB decided against Protegrity on all claims, it promptly stipulated to entry of judgment declaring its '201 and '281 patents to be invalid and waived appeal of the PTAB decisions. Dkt. Nos. 91, 103. The waiver in itself was significant because Protegrity had objected to CBM review of the '201 and '281 patents on the grounds that they did not claim a financial service or product. *See* Dkt. No. 69-1 at 19; Dkt. No. 75-1 at 16. The PTAB overruled the objections for reasons that may now be open to question under the Federal Circuit's decision in *Secure Axcess, LLC v. PNC Bank Nat'l Ass'n*, Case No. 2016-1353, 2017 WL 676601, at *8-9 (Fed. Cir. Feb. 21, 2017). Protegrity also agreed to allow the moving parties to reserve a Section 285 fee motion, Dkt. No. 103, and voluntarily dismissed several defendants. Dkt. Nos. 82, 85-90, 98-99, 102.

This is not the record of an abusive litigant who wielded a lawsuit as a weapon against an opponent. Nor have defendants demonstrated that this litigation was part of an abusive pattern of filing suits solely to force settlements. Protegrity's prior settlements were reached, for the most part, after substantial litigation, and the fact that it eventually sued a number of other parties "does not mandate negative inferences about the merits or purpose of this suit." *SFA Systems*, 793 F.3d at 1351. If anything was surprising here, it was Protegrity's agreeability to staying the court proceedings, accepting the PTAB's findings, and voluntarily terminating its claims. It may be true, as defendants suggest, that Protegrity could have handled some motions and other stages of the case with greater refinement and skill, but the same can likely be said about defendants, and that alone does not disturb the conclusion that the overall course of conduct here was within the bounds of conventional practice.

Defendants also fail to point to any overt examples of what supposedly went wrong. They have a catalog of complaints about Protegrity's venue positions, the behavior of its CEO at

mediations and in email communications, and so on. But how these events amount to unreasonable conduct is not at all clear. Protegrity and defendants hotly contest almost everything about these issues, and they have submitted vast quantities of conflicting declarations and other evidence running into the thousands of pages. Informatica alone filed materials exceeding 2,000 pages. *See,e.g.*, Dkt. No. 115. Resolving these disputes would entail a massive fact-finding effort. This is the opposite of reasonably clear evidence showing that a case is exceptional.

The venue issue is a good example of how defendants' complaints fail to catch the eye as evidence of egregiousness. Defendants say Protegrity improperly asserted venue in the District of Connecticut on the basis of a bogus license arrangement with a subsidiary located there. But the record on this is decidedly more opaque and ambiguous than defendants suggest. The fight about Protegrity's subsidiary and its ties to the District of Connecticut appears to have been addressed mainly in another action involving a defendant not present here, and the district judge simply noted there that the "issue cannot be resolved as a matter of law on the existing record." Dkt. No. 115-21 at 3-4. Informatica later moved to transfer venue to this district under 28 U.S.C. § 1404(a), and raised the subsidiary dispute again in that context. Dkt. No. 115-13 at 1. The court granted a transfer to this district but expressly found that Connecticut did "have some connection to the events in this case," albeit outweighed by stronger connections here. Dkt. No. 115-18 at 10. The court did not indicate in any way that Protegrity's venue arguments were frivolous or made in bad faith. Nothing here stands out in a way that would justify fee shifting.

Defendants' effort to portray Protegrity's claims as exceptionally meritless is equally unavailing. They again do not start from a position of strength. Protegrity filed these cases after settling prior lawsuits for what it represented were tens of millions of dollars. Cases settle for many reasons and the Court is not inclined to give great weight to this fact alone. But these settlements substantially exceeded simple nuisance value, and Protegrity cannot be faulted for taking the settlements as validation that it had valuable claims. To be sure, Protegrity suffered a complete defeat in the PTAB reviews, which is why defendants brought these motions. But Protegrity's claims were not summarily thrown aside as exceptionally meritless. The PTAB analyzed Protegrity's patents in several written decisions that were issued after taking evidence

and argument in some volume, and that collectively run into the hundreds of pages in length. *See* Dkt. Nos. 69-1, 73-1, 75-1, 76-1, 77-1, 78-1, 81-1. While not a dispositive factor here, it is also worth noting that the PTAB did not characterize Protegrity's claims as exceptionally meritless or unreasonably handled.

Defendants nevertheless raise several specific issues in the hope of showing that Protegrity's claims were baseless. They say, for example, that Protegrity failed to do adequate presuit investigations before suing them for infringement, but the facts are again not in defendants' favor. The record shows that for each defendant, Protegrity engaged in a two-step presuit review internally by Ulf Mattsson, Protegrity's former CTO, and externally by its patent counsel. With respect to Aptos, the presuit review began in October 2011, more than two years before Protegrity sued it. Dkt. No. 127-1 ¶¶ 36-37. Mattsson prepared a claim chart, apparently predicated on a white paper circulated by Aptos, comparing claim 1 of the '201 patent with Aptos' Secure Data Manager product on November 23, 2011. *Id.* ¶¶ 39-40. Over the next twenty-one months, Mattsson reviewed at least a dozen other documents as part of his investigation before sending an updated claim chart and supporting documents to outside counsel at the Gray Robinson law firm. *Id.* ¶¶ 42-57. Gray Robinson then did its own analysis, prepared its own claims chart, drafted a complaint, and filed suit. Dkt. 127-28 ¶¶ 23-29.

The same two-step approach was used for the other parties. Mattson began his investigation of Informatica in November 2011, and specifically reviewed Informatica's papers and technical documentation and did a comparison of claim 1 of the '201 patent with Informatica's accused product. Dkt. No. 131-1 ¶¶ 36-52. Before suing Informatica, Gray Robinson again did its own analysis of the infringement claims and prepared its own claim chart. Dkt. No. 131-52 ¶¶ 24-34. The same procedures were followed for Corduro. *See* Dkt. No. 129-1 ¶¶ 36-51; Dkt. No. 129-19 ¶¶ 23-36.

This is enough to overcome defendants' criticisms, and when they try to take a deeper dive, they founder again on highly contested facts and an unclear record. For example, Corduro and Protegrity disagree over Protegrity's effort to contact Corduro before suing. Protegrity submitted evidence showing that it sent two pre-litigation letters requesting technical information

about Corduro's accused PayMobile product. Dkt. Nos. 150, 150-1, 150-2, 150-3, 150-4. Corduro initially said it never got the letters, but later seemed to backtrack on that. Dkt. No. 138 at 7 n.1; Dkt. No. 151 at 1. Even assuming just for discussion that this dispute is material to the adequacy of the presuit investigation, the Court cannot resolve it on the unsettled record, and holding mini-trials on disputes like this has no place in deciding a Section 285 motion.

The fact that Protegrity does not appear to have obtained and deconstructed full working copies of defendants' products before filing its complaints also does not fatally undermine its presuit investigations. Defendants do not cite any governing case law mandating that step, and the Court declines to hold that that is an essential undertaking in all patent cases on pain of fee shifting if it is not done.

Defendants go on to say that developments during the course of the litigation should have compelled Protegrity to drop its claims. Aptos contends, for example, that Protegrity should have dismissed it after it gave Protegrity a sample database, some technical documentation, and an outline of its non-infringement position in 2014. Dkt. No. 112 at 5. But the record is again muddy at best on what this "sample database" consisted of and what Protegrity actually got. *Id.* at 5; Dkt. No. 112-19 at 1; Dkt. No. 112-20 at 1. Even assuming Protegrity received a sample database, Aptos declined to provide a complete copy of its software or any source code, *see* Dkt. No. 112-19 at 3, and Protegrity's counsel not unreasonably told Aptos's lawyer that a single sample database was of questionable value in determining whether its software infringed the '201 and '281 patents. *See* Dkt. No. 112-20 at 1. This is not a reasonably clear showing that Protegrity should have dropped its claims against Aptos.

Informatica takes a more categorical approach to say that Protegrity should have known after publication of *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), that its claims were meritless. Dkt. No. 116 at 10. That goes too far. *Alice* put a much sharper point on the patentability question under 35 U.S.C. § 101, but it by no means required Protegrity to abandon all hope and terminate its claims. Protegrity owned presumptively valid patents, and *Alice* did not, as Informatica urges, provide such clear-cut guidance that Protegrity should have voluntarily given that presumption up without a fight.

Informatica also complains about Protegrity's allegedly shifting constructions of the term "database" in different forums. Dkt. No. 116 at 7-9, 11. Even if, as Informatica contends, Protegrity took somewhat different positions on the construction of "database" in different courts, Informatica has not shown that Protegrity misled a judge, misrepresented facts, significantly increased litigation costs without a reasonable basis in law or fact, or did anything else that would rise to a level of egregiousness that might warrant fee shifting. It is not uncommon for claim constructions to change as a case develops, and those changes are not necessarily indicative of unreasonable conduct or meritless claims. *See PrinterOn Inc. v. BreezyPrint Corp.*, 93 F. Supp. 3d 658, 711-12 (S.D. Tex. 2015) (and cases cited therein).

As a final point, defendants try to make much out of the claim that Protegrity's infringement contentions were, in their view, threadbare and incomplete. This too is unpersuasive as a reason to shift fees. Fights over the adequacy of infringement and invalidity contentions are commonplace in patent litigation and are not inherently indicative of unreasonable conduct. Moreover, resolution of defendants' complaints would entail, once again, an inappropriate exercise in resolving a mass of contested facts on a highly disputed record.

**CONCLUSION**

Defendants have failed to show that Protegrity's case was exceptionally meritless or unreasonably handled, or amounted to a gross injustice against them. Consequently, the motions to award attorneys' fees under Section 285 are denied.

**IT IS SO ORDERED.**

Dated: February 27, 2017

JAMES DONATO
United States District Judge